Nos. 11,358, 11,359, 11,360, 11,361.

Fort Lyon Canal Co. *v.* Rocky Ford Canal, Reservoir, Land, Loan and Trust Co., et al.

Decided May 24, 1926.

Proceeding to change point of diversion of water. Decree for petitioners.

## *Reversed.*

1. Water Rights—*Diversion—Property Right.* In Colorado, the right to divert water from a natural stream and to use the same for growing agricultural crops, is a property right.

2. *Use—Location.* It is not essential that a water right be forever used on the particular tract of land to which it was first applied. The owner may sell it separate and apart from such land, or may change the place of use or point of diversion, so long as the vested rights of other appropriators are not thereby injuriously affected.

3. *Change of Point of Diversion—Qualified Right.* The right to change the point of diversion of irrigation water is none the less a qualified right because petitioner acquired it by purchase.

4.    *Change of Point of Diversion—Evidence—Injurious Effect—Enlarged Use.* In a proceeding to change the point of diversion of irrigation water, the exclusion of evidence the tendency of which is to show that if the proposed change is permitted petitioner intends to and will use the transferred priorities for a longer time and in greater quantity than the same had theretofore been used, is held to be reversible error.

5.    *Change of Point of Diversion—Issues.* In a proceeding to change the point of diversion of irrigation water, abandonment is not a proper issue, but the question of enlarged use that necessarily or probably will ensue, is a proper issue.

*Error to the District Court of Pueblo County, Hon. James A. Park, Judge.*

Mr. H. L. LUBERS, Messrs. HODGES, WILSON & ROGERS, for plaintiff in error.

Mr. JOHN H. VOORHEES, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

FOUR separate proceedings, under our pertinent statute, asking the same relief, were filed by the petitioner, the owner of the Rocky Ford Highline Canal, and were consolidated for hearing as one case. The object of the consolidated case is to obtain a decree allowing petitioner to change the original point of diversion from the Arkansas river, of three small ditches, called the Swallows ditches, situate in the western part of Pueblo county—whose early priorities of 1870-1872, aggregating 8.3 second cubic feet, the petitioner had acquired by purchase—and to take out their decreed volume of water at the headgate of the petitioner's Highline Canal, about 40 miles further down the river and therewith irrigate the lands lying under that canal; and as part

of the same transaction to transfer up to the headgates of these Swallows ditches in exchange an equal volume of water of petitioner's priority of a later date, 1890. On final hearing and upon a vast mass of lay and expert testimony and record evidence the trial court found for the petitioner, and granted the change to the extent of 80 per cent of the decreed priorities of the Swallows ditches, deducting 20 per cent thereof as compensation for the loss to the river which such changed conditions would cause. There were several protestants below, but of them only one, the Fort Lyon Canal Company, appears here as plaintiff in error. Its grievance is that its vested rights, as a junior appropriator from the same source of supply, are injuriously affected by such change.

The well prepared briefs and able oral arguments of counsel have materially lightened our labors. The record discloses the care which the trial judge exercised throughout the prolonged hearings, and his conscientious effort to save the petitioner the fruits of its purchase of early priorities and at the same time to prevent or minimize injury to the vested rights of the protesting respondent, the Fort Lyon Canal Company, the headgate of whose canal is further down the river and below the headgate of petitioner's canal into which the Swallows priorities are to be diverted. Were it not that the trial court consistently, but improperly, refused the repeated offers of protesting respondent's counsel to show, by legitimate evidence, that the proposed change would necessarily, or by reasonable inference, or probably, result in material injury to the respondent's vested rights as a junior appropriator, a different case might have been made. Notwithstanding the insistence of petitioner's counsel to the contrary, the record, as will presently be pointed out, shows this erroneous and prejudicial ruling was due to the trial court's misconception of our recent decision, *Cache la Poudre Co. v. Water S. & S. Co.*, 74 Colo. 1, 218 Pac. 739, which, being our latest pronounce-

ment on the subject, was interpreted by the trial court as overruling, or at least inconsistent with, our earlier decisions, which, where it not for this latest holding, would require the admission of the offered evidence which the trial court rejected.

The Arkansas river, where the Swallows ditches tap it, flows in an easterly direction in a narrow canon varying from a few hundred yards to one half mile in width. The stream runs on a flat level floor or bed, composed of gravel, sand, clay and other substances washed down by the elements from the adjacent walls of the canon. The lands that have been irrigated by the ditches lie close to the river. In the main, they are level and flat and the surface and underground drainage is chiefly towards the river. The water underlying these flat lands runs on a table from two to four feet under the surface, and the parties treat this water table as a part of the underflow of the stream itself. When water from the ditches is spread upon the adjacent lands, all close to the river, what is not absorbed by the soil, or lost in evaporation, or converted into plant life, quickly returns to the river channel as seepage. About 435 acres of land are served by the three ditches, the length of the longest of which does not exceed two miles. The crops grown are corn, oats, wheat, alfalfa and garden truck.

The lands under petitioner's Highline Canal are uplands or prairies. By direct line they are about 35 miles down the stream from the Swallows ditches and several miles further, measured by the actual course of the river. The canal is about 79 miles long and irrigates 25,000 acres of land, being a strip about a mile wide lying between petitioner's canal and the next one down the river, and the canal extends along the uplands for a distance of 9 or 10 miles from petitioner's headgate. The avowed purpose of petitioner is to transfer and divert the Swallows priorities to the headgate of its Highline Canal to irrigate the lands of its owners.

It is a settled doctrine in this state that a right to divert water from our natural streams and to use the same for growing agricultural crops is a property right; that it is not essential to its continued existence that the water thus diverted be forever used on the particular tract of land to which it was first applied, but its owner may sell it, separate and apart from such land, for use on other lands of the grantee, or he may himself change the place of use or point of diversion, so long as the vested rights of other appropriators are not thereby injuriously affected. Both parties here recognize this doctrine and the only question in dispute between them is whether the proposed change will injure the respondent.

Notwithstanding this recognized right of change, the petitioner for the purpose, we suppose, of negativing any presumption that might arise that it was indulging in a mere speculative scheme, informs us that in 1921 an unprecedented and disastrous flood swept the Arkansas Valley in the region of the Swallows ditches, which practically obliterated them and covered the irrigated lands to the depth of several feet with the deposits and debris which the flood carried. Before that time the lands were profitably and successfully tilled and various crops were harvested. The damages resulting from the flood were so great that the cost of any practical plan to reconstruct the ditches and to restore the lands to their former productive condition would be prohibitive, and so the owners, to minimize their losses, concluded to dispose of, and they did sell and transfer to the petitioner, their early priorities, and as a part of the consideration therefor arranged for the transfer of the petitioner's later priorities as already stated. As this exchange feature of the case is deemed by the parties themselves immaterial to the present controversy, no further reference is made to it. The right to change the point of diversion is, of course, none the less a qualified right because petitioner acquired it by purchase.

The petitioner's theory and contention below and its entire case are to be found in the testimony of Mr. Patterson, its expert intelligent witness. His conclusion, which coincides with petitioner's theory, is that no substantial injury will be inflicted upon the respondents by the change if the same is allowed. The general effect of petitioner's testimony, in line with the testimony of Patterson, is its tendency to show no injurious result since the same amount of seepage which the respondent enjoyed from the return flow into the river from the land when it was irrigated from the Swallows ditches, the respondent would continue to enjoy after the Swallows priorities are transferred to the Highline headgate and spread over the Highline lands; the point being that in either case the seepage from the lands back into the stream above respondent's headgate would be about 50 per cent of the volume of diverted water whether applied to the Swallows, or the Highline, lands. The theory of the respondent was that, in the very nature of the case, and in obedience to well known physical law, not only would the seepage from the Swallows lands be materially greater than from the Highline lands because of the location of the former with reference to the stream, and the character of its soil, but also that necessarily, or by reasonable inference, or probably, the result would be that the petitioner would use the decreed volume in a greater quantity and for a longer period of time than the priorities had been used by their owners in irrigating the lands under the Swallows ditches. The respondent further contended that, as a junior appropriator, it is entitled to a continuance of the river conditions that existed at the time its own priorities were acquired, and at that time the senior Swallows priorities were applied to the Swallows lands near the river and the owners never needed and never used or could profitably use the full volume of their decreed priorities. A further claim by the respondent is that the petitioner,

if the change is allowed would, in times of scarcity, when the question of relative priorities becomes important, use and divert the Swallows priorities, commingled with its own decreed priorities, every day during the ordinary irrigation season to the fullest extent and for the entire time that it could get the water into its ditches; hence, since the parties concede that the ordinary flow of the Arkansas river is sufficient to supply only priorities of a date prior to April 1884, and that as to all priorities subsequent thereto, which include those here involved, there is not enough water for all in times of scarcity, and as the former owners of the Swallows priorities did not and could not use their priorities, either in volume or time to the extent that such use would be made of them by the petitioner, if a change was granted, respondent would necessarily or probably be materially injured if the change is permitted.

The respondent made an offer to produce evidence in support of each and all of these contentions, and the trial court repeatedly ruled that, while it might produce evidence showing loss or damage by the change, in greater evaporation, or less return to the stream, and things of that character, it as consistently rejected the offers of proof that the change will necessarily, or probably, result in a use of the water by petitioner for a longer time or in greater quantity. As the petitioner strenuously contends that there was no error in such ruling, and that it is justified by the decisions of this court we shall first reproduce, even though it prolongs the opinion, the several different rulings of the trial court which are unquestionably erroneous. The trial judge said it was true that evidence of greater evaporation and the like are admissible in this kind of an action, but he said that evidence tending to show that use of the priority, if the change is allowed, of a larger quantity or for a greater length of time after the change, ought not to be received. At another time, the court said that evidence indicating

a greater use, both in quantity and time, of the water transferred is not admissible. In sustaining the petitioner's objection to a question of respondent's the court said: "The question which has just been asked is intended to raise the question of a greater use of the water, after the transfer, both in quantity and in time, and the objection to the question is therefore sustained." So we say that the court refused to admit what we say is legitimate evidence of the respondent, whose tendency is to show that if the proposed change is permitted the petitioner intends to, and will, use the transferred priorities for a longer time and in greater quantity than the same had theretofore been used when the water was applied to the Swallows lands. The respondent may not be heard to complain of all of the court's rulings as to the element of return waters, evaporation and transpiration, though there were some rulings that might be said not to have permitted respondent free scope in this direction. As to the rulings refusing competent evidence as to the enlarged use the trial court was manifestly wrong. It is due to the learned judge to say that they were made because he interpreted the latest decision of this court on the subject, *Cache la Poudre v. Water S. & S. Company, supra,* as overruling, or inconsistent with, *Bates v. Hall,* 44 Colo. 360, 98 Pac. 3; *Fort Collins Co. v. Larimer & Weld Co.,* 61 Colo. 45, 52, 54, 55, 156 Pac. 140; *Baca Ditch Co. v. Coulson,* 70 Colo. 192, 194, 198 Pac. 272; *Hoehne Ditch Co. v. Martinez,* 71 Colo. 428, 430, 207 Pac. 859; *Huerfano Ditch Co. v. Welton Co.,* 73 Colo. 103, 105, 213 Pac. 998, all of which held that proof of the character rejected here was admissible in this kind of proceeding. We do not understand that the trial court was of the opinion that the case in 74 Colorado overruled or was inconsistent with the cases between the same parties reported in 29 Colorado 469, and 49 Colorado 1, but only inconsistent with the other cases above cited. We make this statement because the

court said that the case in 74 Colorado 1, returned to
the original doctrine as announced by this court in 29
and 40 Colorado, but that it overruled or was inconsist-
ent with cases like Bates v. Hall. Manifestly the trial
court misconstrued the effect of our decision in this case
reported in 74 Colorado. It so happens that the writer
of this opinion wrote the opinions in the three Cache la
Poudre cases and also the opinion in Bates v. Hall. We
did not intend to, neither did we, hold in that or in any
other case that an enlarged use might not operate to
prevent a change. In the Bates case the opinion reported
in 29 Colorado, was referred to and the paragraphs
therein where the court said it was not proper, in a
proceeding to change the point of diversion, to go into
the question of enlarged use which the petitioner
*"might"* make of the water after the point of diversion
was changed, and that much of the evidence there re-
ceived was improper because it bore, not on the neces-
sary conditions, but upon an asserted claim that peti-
tioner *might,* not that it necessarily or probably *would,*
enlarge the use. We immediately qualified such obser-
vations when we added that if the evidence showed that
the changed conditions necessarily or by reasonable in-
ference would result in enlarged use, the petition for the
change should not be granted. In the case in 49 Colo-
rado on page 6, we again refer to the Bates-Hall case
and in doing so say that the Bates-Hall case properly
reversed the judgment below, because there the trial
court had refused testimony tending to show that the
desired change of conditions, which would result from
a change in the point of diversion, necessarily, or by
reasonable inference, injuriously affected the rights of
the appellant as it brought about an enlarged use both in
quantity and time. In the latest case, in 74 Colorado,
page 1, we reiterated the doctrine announced in the cases
in 29 and 49 Colorado and further stated that, even if a
change in the point of diversion of water has been by

decree in the statutory proceeding permitted, if the one securing the same enlarges, or attempts to enlarge, the use of his appropriation to the injury of another, the decree will not properly bar relief to the latter. If so, it certainly is likewise true, if an appropriator, who is seeking to obtain a decree for a change in the point of diversion or place of use, intends to, and *will,* not merely *might* make, use of the water, if the change is made, in larger quantity or for a longer time, than before the change, evidence thereof is admissible. In such a case, if such a result necessarily, or probably, or by reasonable inference results, the change should not be permitted except upon such terms and conditions as may be prescribed or fixed to prevent such injurious effects, and if impossible to make such terms and conditions, the application should be denied.

From the foregoing it must not be concluded that we entirely agree either with the petitioner or respondent as to all of their contentions. It may be that not all of the cases above cited, as authorizing the reception of the kind of evidence rejected by the trial court, in all respects are accompanied by the same or equivalent facts that attend the instant case. What we say is, and our holding is thus limited, that the trial court manifestly committed error in refusing the respondent's offer of proof as to an enlarged use in time and volume that would result from the proposed change of conditions. We repeat, what we have said in other cases, that abandonment is not a proper issue in a proceeding like this, but the question of an enlarged use, that neccesarily or probably *will* ensue, is a proper issue. The testimony which the respondent sought to produce upon that issue should have been received. What effect such testimony may have it would not be proper for us in advance of its reception even by inference to suggest. That is something for the trial court in the first instance to determine when the evidence has been admitted. The trial court

in its finding and decree here, deducting 20 per cent of the Swallows priorities, is conclusive that the court thought the respondent would be damaged at least to that extent. This injury or damage which the trial court held necessarily would so result, might be materially increased by the evidence which the respondent, in case of a new hearing, might produce upon the issue of an enlarged use which was on this hearing entirely excluded. The expert witnesses of both parties were not permitted to base their estimate of injury upon any increase of use, either in volume or time, that would probably result if the change was made. They were restricted, under the rulings of the court, to the issues of return water, evaporation and transpiration or conversion of water into plant life. The issue of enlarged use, to say the least, is or may be of as much importance as either of the others and the court should have heard testimony upon all of the elements of damage as above indicated. As the parties to this review are the only ones now concerned in the controversy, the evidence as reproduced in the bill of exceptions, may be used in the new hearing, if any is had. The parties may produce additional legitimate evidence, as they may be advised, upon all the issues, which we have held to be in the case.

The decree must be reversed and the case remanded for a new trial, further proceedings, if any, not to be inconsistent with the views herein expressed.

Mr. Chief Justice Allen and Mr. Justice Sheafor concur.