[No. 5841.]

## VOGEL ET AL. v. THE MINNESOTA CANAL AND RESERVOIR COMPANY ET AL.

1. **Water Rights—Change of Point of Diversion**—The conceded right of the appropriator to change the point of diversion is not to be exercised without limitation. It will not be permitted where the change will result injuriously to third persons, even though junior in right.—(537)

Application was made for leave to change a portion of the waters decreed to the Clark & Wade ditch, to the Turner ditch, four miles, and the residue to the Beaver Dam ditch, seven miles higher up the stream than the headgate of the Clark & Wade ditch. The volume decreed to the Clark & Wade ditch was the greater part of the volume of the stream, even when water was most abundant. Intervening ditches had been constructed and operated for many years, obtaining always water sufficient to mature the crops planted under them. During the same time, by reason of the return of the waters to the stream, after use by the proprietors of the intervening ditches, the proprietors of the Clark & Wade ditch had always obtained a sufficient volume to satisfy their needs. The loss by seepage and evaporation was large. It appeared that if the change proposed was permitted the waters would be carried to another valley, so that there would be no return; that the effect of this would be to cast upon the junior appropriators, between the Beaver dam, and the Clark & Wade ditch, the whole of this loss by seepage and evaporation, and that probably no water would remain for the intervening junior appropriators. On their objection the application was denied.—(538-541)

2. **Water Rights—Rights of Senior Appropriator**—If the first appropriator obtains, by the return of the waters to the stream, after use by the junior appropriator above, sufficient water to supply his needs, he has no cause of complaint. It is not required that the junior should, under all conditions, allow sufficient water to flow past his headgate, to supply the senior appropriator below him.—(540)

3. **Rights of Junior Appropriator**—The junior appropriator has, as against his senior, a vested right in the conditions which existed upon the stream when he made his appropriation, and in the methods then prevailing as to the use of the water.—(542)

*Appeal from Delta District Court*—Hon. THERON STEVENS, Judge.

Messrs. KING & STEWART, Mr. MILLARD FAIRLAMB, Mr. MILTON R. WELCH, and Messrs. GOUDY & TWITCHELL, for appellants.

Messrs. BELL, CATLIN & BLAKE, and Mr. MERLE D. VINCENT, for appellees.

This is a proceeding by Peter Vogel, and others like situated, for an order changing the point of diversion up the stream, of certain priorities to the use of water for irrigation drawn from Minnesota creek, awarded to the Clark & Wade ditch, a portion thereof to the Turner ditch, and the balance to the Beaver Dam ditch, the former located a distance of about four miles above the original headgate of the Clark & Wade ditch, and the latter about seven miles. The owners of the Sweezy & Turner ditch, the Clough & Turner ditches Nos. 1 and 2, and the Minnesota canal, all junior appropriators of water from Minnesota creek, protest this application, and allege injury to their respective vested rights to the use of water for irrigation from that creek, and in the conditions thereon as they prevailed at the time and times of their respective appropriations. The headgate of the Turner ditch is above the headgates of the Clough & Turner ditches Nos. 1 and 2 and the Minnesota canal, but below the headgate of the Sweezy & Turner ditch. The headgate of the Beaver Dam ditch is above the headgate of all other ditches on the stream. The first priorities of the Clark & Wade ditch, aggregating seven second cubic feet, are first in point of time on the stream, and all its priorities are older than those of the Sweezy & Turner ditch, the Clough & Turner ditch No. 2 and the Minnesota canal. Its first and second enlargements, aggregating two and

eighty-six hundredths second cubic feet, are younger than the priority of the Clough & Turner ditch No. 1. It is sought to divert all of the priorities of the Clark & Wade ditch, except about one-half a second cubic foot, to the upstream ditches. The original diversion point of this ditch is below all other headgates on the stream. The lands which it is proposed to irrigate from the new points of diversion with the priorities of the Clark & Wade ditch are outside the drainage of Minnesota creek, and there will be no return water thereto from the proposed new irrigation.

The normal flow of Minnesota creek, after the middle of July in each season, is small and probably not in excess of an average of seven cubic feet, insufficient to fully supply the decreed rights of the Clark & Wade ditch. In the past the diversion of water by this ditch has not been regular or constant, and it has not in fact diverted at all times, or for any considerable portion of the time, the entire amount of water decreed to it. It also appears that those under the Sweezy & Turner ditch, the Clough & Turner ditches Nos. 1 and 2 and the Minnesota canal have been able, practically all of the time for a long period of years, to secure water each season, subsequent to the date above mentioned, notwithstanding the fact that the Clark & Wade first priorities are in excess of such normal flow, sufficient to irrigate and mature field and orchard crops. That the Sweezy & Turner ditch was never closed down, prior to the year 1902, and then only once, and this too after a portion of the Clark & Wade priorities had been diverted through the Turner ditch; that the Clark & Turner ditches Nos. 1 and 2 have never been closed down. The petitioners admit that they intend to apply the Clark & Wade priorities to several hundred acres of new land lying under the Turner ditch, and that even if all of the water belonging to these priorities is

applied continuously to those lands the supply will still be inadequate to irrigate them. It further appears that the supply of water to Minnesota creek is at all times greatly limited, and that the Clark & Wade ditch priorities constitute a major part of the natural flow thereof. It also appears that if this proposed change in point of diversion is effected, it will impose upon the remaining minor part of the natural flow of the stream the entire burden of loss by seepage and evaporation that occurs before the water reaches the headgates of ditches down stream. The testimony shows that the bed of the stream is broad, covered with rocks, gravel and obstructive growths, all more or less augmenting the natural losses, which in the past have been shared by the entire flow of the stream. It appears that, if the Clark & Wade priorities are diverted from the stream at its old headgate, all accretions to the stream from points above through the return waters from irrigation, will assist in furnishing water to satisfy those priorities. Whereas if the point of diversion be removed up the stream, a part to the headgate of the Turner ditch and a part to the headgate of the Beaver Dam ditch, such accretions will be unavailable.

Mr. JUSTICE BAILEY delivered the opinion of the court:

That the right, in an owner of a water priority for irrigation, to change the point of diversion is not absolute is well settled. It is a qualified right, and its exercise is conditional upon the fact that such change will not injuriously affect the vested rights of others. Such has been the uniform holding of this court through an unbroken line of decisions, beginning with *Fuller v. Swan River Co.*, reported in 12 Colo. at page 12, and *Strickler v. Colorado Springs*, reported in 16 Colo. at page 61, down to the present

time.   While it is true that the right to change the
point of diversion is a property right, it is one which
may not .be exercised without limitation, or at all,
except upon terms, where it appears that such change
will impair the vested rights of others.   No inflexible
rule, applicable in all cases where such change is
sought, can be laid down.   The right to have the
change depends upon, and must be controlled by, the
facts of each particular case.   The trial court found,
as a fact, that the proposed change will injuriously
affect vested rights, and the testimony, which we have
carefully read at length, supports that finding.   We
unhesitatingly adopt it as our own, not for the reason
given by the learned trial judge, but for others here-
inafter stated.   It sometimes happens that entirely
correct and proper findings are made, for which pos-
sibly inadequate and unsound reasons are stated.
The force of such findings, however, are not neces-
sarily impaired because the reasons given therefor
are not approved, if there be found in the record suf-
ficient testimony to justify them.

   It seems manifest, if the Clark & Wade priorities
are diverted through the Turner ditch and the Beaver
Dam ditch, as proposed, and used constantly during
the irrigating season, as the court found they would
be, and as petitioners admit is intended, that, after
the season of low water in each year sets in, no water
will remain in the stream for the use of any junior
appropriator for any purpose, but on the contrary
the stream will become dry.   In the face of the show-
ing that, for from fifteen to twenty years prior to the
commencement of these proceedings, all junior ap-
propriators of water on the stream have practically,
at all times, been able to grow and mature crops, the
result above suggested, which the proof shows is
likely to occur, clearly establishes that such proposed
change in the point of diversion would alter the con-

ditions theretofore, and at the time junior appropriators secured their rights, existing on the stream, in such a way as to not only injuriously affect, but completely destroy, those rights.

The testimony shows that Minnesota Creek is a small stream; also that the loss by seepage and evaporation is large. In the past the entire flow of this stream, including the Clark & Wade priorities, has been allowed to go down past the headgate of the Clark & Wade ditch, as originally located, the full flow of the stream thus bearing a proportionate part of such loss. The Clark & Wade priorities constitute the major part of the flow thereof, even during that part of the irrigation season when the volume of water is most abundant. The bed of the stream is broad, composed of sand and gravel, obstructed by rocks and a heavy growth of vegetation, requiring a flow of eight or nine second cubic feet of water, according to the testimony, to simply cover it. The flow, at the season of the year when all appropriators are able to secure some water, is, as the testimony shows, approximately from twelve to fourteen second cubic feet. If this be diminished by the withdrawal from the stream of the entire Clark & Wade priorities, amounting to nearly nine second cubic feet, the balance of water in the stream is left to bear the entire loss by evaporation and seepage, which proportionately, because of the diminished volume, would necessarily be greatly increased; the rapidity of the flow is also naturally decreased by the diminution in volume. Under such facts the injurious effects to junior appropriators are too obvious to need elaboration or require discussion. When the flow of the stream is at so low a point that the diversion of the Clark & Wade priorities at the new point would leave it dry, then the disastrous effect upon junior appropriators is still more apparent.

Further, where one has the first priority on a stream, taking water out at the lowest point thereon, it does not follow that junior appropriators, up the stream, must at all times and under all conditions, let sufficient water remain therein and flow past their headgates to supply that priority. The senior appropriator may lawfully demand that he have at his headgate sufficient water to supply his present needs, and if that result be obtained, through return waters after first use by junior appropriators up the stream, the senior appropriator has no just ground of complaint. The testimony here shows that the lands of some at least of the protestants are immediately adjacent to Minnesota creek, and that the drainage therefrom is quickly back to the stream. It may well be that prior use can frequently be made, by those of the protestants thus situated, of the flow of the stream, with a sufficient return thereof to in no wise interfere with petitioner's use of the water farther down, according to the very terms of his decree. Indeed from all of the testimony the fair inference is that this precise condition has heretofore prevailed on Minnesota creek. This is a condition the maintenance of which is most material to the junior appropriator, one in which he has a vested right, and is entitled to have preserved. It is too clear to need comment, that, if petitioners be allowed to divert the entire priorities of the Clark & Wade ditch at the points up the stream as proposed, this right in junior appropriators is nullified.

Sec. 2 of the Laws of 1903, under the provisions of which petitioners seek to make the proposed change, is as follows:

"The court shall require proof that all parties who may be affected by the change have been duly notified in the proceeding, as in the case of an original adjudication, and shall hear evidence to deter-

mine whether such change will injuriously affect the
vested rights of others in and to the use of water, and
a decree shall be entered permitting the change as
prayed for, unless it appear that such change will
injuriously affect the vested rights of others; and if
such injury appear, the court shall decree the change
only upon such terms and conditions as may be neces-
sary to prevent such injurious effect, or to protect
the parties affected or if impossible so to do, may
deny said application."

A review of the record satisfies us, as the trial
court must have been satisfied, that the petitioners
failed to establish that no injury to protestants from
the proposed change would result. It further ap-
pears, when the court was about to deny this applica-
tion *in toto,* that the attorneys of the petitioners sug-
gested it as a duty, under the above provision, for
the court to allow the change on terms, whereupon
the judgment appealed from, allowing a change of
four second cubic feet, was announced. This seems
a fair composition of the matters in dispute, and we
are not disposed to disturb it.

This court has often said, in substance, that a
junior appropriator of water to a beneficial use has
a vested right, as against his senior, in a continua-
tion of the conditions on the stream as they existed
at the time he made his appropriation. If this means
anything, it is that when the junior appropriator
makes his appropriation he acquires a vested right
in the conditions then prevailing upon the stream,
and surrounding the general method of use of water
therefrom. He has a right to assume that these are
fixed conditions and will so remain, at least without
substantial change, unless it appears that a proposed
change will not work harm to his vested rights. This
law is peculiarly applicable to the facts here, and
applied to them makes it certain that the judgment

complained of is quite as favorable to petitioners as the facts warrant. We cite, in approval of the conclusion reached, the following cases: *The Handy Ditch Co. v. The Lowden Ditch Co.*, 27 Colo. 515; *Cache la Poudre Co. v. Water Co.*, 29 Colo. 469; *Cache la Poudre Co. v. Water Co.*, 26 Colo. 161; *Bear Bros. L. & C. Co. v. Wilson,* 38 Colo. 101; *Bates v. Hall,* 44 Colo. 371.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.