# No. 12,057.

## CITY AND COUNTY OF DENVER *v.* COLORADO LAND AND LIVESTOCK CO., ET AL.

Decided June 17, 1929.

Mr. Thomas H. Gibson, Messrs. Lindsey & Larwill, Mr. E. C. Burck, for plaintiff in error.

Messrs. Twitchell, Clark, Burkhardt & King, Messrs. Smith & Brock, Mr. John P. Akolt, Messrs. Wright & Ireland, Messrs. Ponsford, Pender & Larwill, Mr. Harry N. Haynes, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court

Plaintiff in error is hereinafter referred to as "the city" or "the plaintiff," and defendants in error as "the defendants."

The city has a decreed priority, as of date 1860, for certain water for power and irrigation purposes. This is diverted from the South Platte river through the headgate of the Rough and Ready ditch, located near Littleton, the county seat of Arapahoe county. It brought this action under sections 1706 and 1707, C. L. 1921, for a decree moving the diversion point of 14.1 second feet of its power appropriation and .27 second feet of its irrigation appropriation several miles upstream, splitting the appropriation, using part of it to replace leakage from a reservoir and dividing the remainder and using it in different places to supply losses in the operation of different filters. The several defendants in error appeared by answer, generally also denominated "protest, objection and demurrer." The demurrers were overruled and the cause tried to the court. Findings generally were for defendants and specifically that "the evidence shows that said change would injuriously affect the vested rights of other appropriators." To review the judgment entered accordingly, the city prosecutes this writt. The 14 assignments amount to nothing more than that the decree is not supported by the evidence.

The burden was upon the city to show that the

proposed change would not impair vested rights. *Cache la Poudre Res. Co. v. Water S. & S. Co.*, 25 Colo. 161, 53 Pac. 331, 46 L. R. A. 175, 71 Am. St. Rep. 131; *New Cache la Poudre Irr. Co. v. Water S. & S. Co.*, 49 Colo. 1, 111 Pac. 610.

■ Junior appropriators have a vested right in the continuance of conditions existing on the stream at the date of, and subsequent to, their appropriations, as against injurious changes. *Vogel v. Minn. Canal & Res. Co.*, 47 Colo. 534-541, 107 Pac. 1108; *Farmers' High Line & Res. Co. v. Wolf*, 23 Colo. App. 570-578, 131 Pac. 291.

■ When an appropriation has been diverted, used and returned, it becomes again a part of the stream in which junior appropriators below acquire a vested right. *Vogel v. Minn. Canal & Res. Co., supra.*

■ An appropriator will not be permitted to take his headgate upstream past a material portion of his former water supply. Id.

This plaintiff already owns certain consumptive appropriations now being diverted at the points to which the change here in question is sought. Its power water, here involved, having been heretofore devoted to milling purposes, we refer to it as the "mill dam appropriation." These defendants represent the owners of almost 100 ditches and reservoirs having appropriations which they contend are threatened by the contemplated change. These projects lie in various irrigation districts, and their headgates are widely scattered. They range from far below the present point of diversion of the water in question to far above those to which the city would move it.

After a careful and extended study of the record and briefs in this case, and of the authorities cited by the several parties, our conclusion is that the judgment must be affirmed, and that, irrespective of all other questions raised in argument, it must be so affirmed on the facts and findings of the trial court. Furthermore, we can discover no useful purpose to be served by going at length

herein into the various ramifications of the evidence and the numerous contentions of the respective parties.

█ If the city has failed to establish by this record that no single defendant has a single vested right which the proposed change will injuriously affect, or that such effect can be prevented by terms and conditions which could reasonably be imposed by the court, then the change was properly denied and the judgment must be affirmed. We think the city has so failed as to numerous vested rights of numerous defendants. A few illustrations will suffice to make clear our position.

If the circumstances and conditions of the leakage in plaintiff's reservoir are such that others have obtained a vested right in the escaping water, then the decree sought by the city would increase its appropriation to the irreparable injury of vested rights. If not, and the loss can be obviated by a repair of the reservoir, the city must make that repair. If the loss cannot be so obviated, then the city is in the position of being obliged to turn a portion of its consumptive appropriation at the reservoir into a nonconsumptive use in order to secure the remainder. In other words, the operating conditions are such as to make it impossible for the city to use its entire consumptive appropriation. If it be now permitted to change the point of diversion of part of its nonconsumptive appropriation to remedy this condition the decree would add to its consumptive use by that exact amount, and to that exact extent must be detrimental to other appropriators.

What has been said applies with equal force to that portion of the water in question which, if the change be granted, is to be used for the operation of the city's filters. Under present conditions it requires a nonconsumptive use of a portion of its consumptive appropriation to render the remainder available. If it be permitted to substitute therefor, by change of point of diversion, a portion of its nonconsumptive appropriation of 1860, its consumptive appropriation at the filters will be increased

to that extent, and, to that exact extent, other appropriators on the stream will be damaged.

There is evidence that this nonconsumptive appropriation of 1860 is supplied, at least at times and in part, by waters flowing into the stream between the city's present and proposed diversion points. This supply is, of course, variable. If the change be granted junior appropriators above the proposed diversion point will be deprived, at least of a portion, of their present supply to make up to this senior appropriator what it loses by moving its headgate upstream past a portion of its present source of supply. To that extent the stream conditions will be changed, and the vested rights of such junior appropriators injuriously affected.

A defendant whose consumptive appropriation is senior to those which the city now diverts at its filters and reservoir, but junior to that which it seeks to change, and whose headgate is between the two, would be seriously injured by having this senior appropriator put on the stream above him and permitted to return its nonconsumptive appropriation to the stream below him.

A defendant with a junior consumptive appropriation takes his water from the stream below the present return point of plaintiff's mill dam appropriation and depends thereon for his supply. Upper appropriators, senior to him, have been obliged to permit water to pass their headgates to supply this mill dam appropriation. If its diversion point be now moved above the headgates of those seniors such a change in stream conditions results as works tremendous and irreparable damage to that defendant.

While it may not always be impossible to change the point of diversion of a nonconsumptive appropriation without such a change of stream conditions as to injuriously affect the vested rights of other appropriators, it is obvious that the difficulty increases with the lapse of time and the multiplication of junior consumptive appropriations. Here more than 65 years have passed since

the date of plaintiff's mill dam appropriation and such junior appropriations have averaged more than one for each of those years.

Considering now the ever-variable water supply, the changing crops, the constantly shifting demands of appropriators incident thereto, the interrelation and interdependency of the numerous priorities of these parties, it seems to us almost self-evident that such changes as that here sought must injuriously affect vested interests, and that no practicable terms or conditions could here be imposed which would obviate that injury. Certain it is that the findings of the trial court are amply supported by this record, hence cannot be disturbed by us.

Error is assigned on the failure of the court to find that certain "safeguards" suggested by plaintiff would, if inserted in the decree, prevent the impairment of vested rights, and complaint is made of its neglect to even note the suggestion. The court was not obliged to make specific findings on the subject, but since all presumptions favor the judgment we must assume that the court found the contrary. Moreover, since the impairment would arise from the change of the point of diversion and not from the amount of water diverted, and since plaintiff's suggested safeguards dealt only with the latter, the record on this matter clearly supports our assumption.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER and MR. JUSTICE MOORE concur.