## SOUTHERN SURETY CO. v. TOWN OF TISHOMINGO et al.

No. 19638.   Opinion Filed March 24, 1931.

Cornelius Hardy, Jno. T. Suggs, and Byrne A. Bowman, for plaintiff in error.

W. L. Ratliff, John R. Stobaugh, W. R. Withington, and E. L. Withington, for defendants in error.

ANDREWS, J.  The town of Tishomingo instituted a suit in the district court of Johnston county, Okla., against Myrtle Bullard, J. B. Hutchens, C. H. Holland, and the Southern Surety Company to recover a money judgment for the defalcation of Myrtle Bullard.  There were three causes of action stated in the petition.  The first cause of action, in addition to formal allegations, was that, from the 5th day of April, 1921, to on or about the 15th day of October, 1925, the defendant Myrtle Bullard was the duly elected, qualified, and acting town

clerk and accountant of the town of Tishomingo, Okla.; that before entering upon the duties of her office she executed a bond to the plaintiff which was duly signed by the Southern Surety Company as surety thereon; that there had been a violation of the conditions of the bond in that between the 5th day of April, 1921, and the 5th day of April, 1923, the said Myrtle Bullard collected and failed and refused to account for and became a defaulter of the amount of $685.41. The second cause of action alleged the execution of a second bond with the Southern Surety Company as surety and defalcation during the period from the 5th day of April, 1923, to the 5th day of April, 1925, in the amount of $2,089.80. The third cause of action involved a third bond with the Southern Surety Company as surety and defalcation during the period from the 5th day of April, 1925, to the 5th day of April, 1927, in the sum of $557.47. A general denial was filed by the Southern Surety Company, and the cause proceeded to trial.

At the trial the Southern Surety Company objected to the introduction of any evidence for the reason that the petition did not state facts sufficient to constitute a cause of action and on other grounds. The objections were overruled. Thereupon the attorneys waived the identity of the records, and the plaintiff, the town of Tishomingo, offered in evidence the water and light collection record. An objection was made and the record was admitted so far as it affected the items sued for, to which the Southern Surety Company excepted. The same record was made with reference to records marked exhibits 2, 3, 4, 5, and 6.

While the identity of those records was waived, there was no testimony to show who made them or whether or not they were correct, and they stand in the record unsupported except by the waiver of the identity thereof.

Thereupon E. A. Stalmaker, an unlicensed accountant of six or eight years' experience in making municipal audits in the state of Oklahoma, testified that he made an audit, in the absence of Mrs. Bullard, "of the accounts of Mrs. Bullard as town clerk of the town of Tishomingo," which books he found in the vault in the office of the town clerk, Mrs. Ida Hutchins. He said, "I rechecked and reposted from the cash book to the water, light and consumers register to see that all items on the cash book corresponded with those on the ledger." He was asked what process he used, and he answered: "I checked from the cash book to the ledger. When I finished all the items on the cash book, then I would check them on the ledger and charged her with the shortage." He testified that Mrs. Bullard kept those books. All of this was over the objection of the Southern Surety Company. Thereupon the court asked for a report of his audit, which was produced. He was then asked, "She has shown that she collected how much money more than she has accounted for?" and, over the objection of the Southern Surety Company, he was permitted to answer, "$3,332.68." He was then asked, "Taking the books that Mrs. Bullard kept as town clerk, do you say that is correct?" and he answered, "Yes, sir." Thereafter he proceeded to divide the amount over the different terms that Mrs. Bullard served as town clerk and, upon that testimony and that alone, the court, the trier of facts in the absence of a jury, determined the amount of recovery against the Southern Surety Company. There was no testimony from the town treasurer as to how much money he received from Mrs. Bullard; there was no testimony from anyone as to how much money was paid to Mrs. Bullard, and this record shows in support of the judgment as to the amount of alleged defalcation only the conclusion of a paid auditor as to what he thought the books showed. The audit, shown by the record, which we do not consider to be competent evidence, recites, "In this report we have shown the amount collected by Myrtle Bullard, city clerk, and not accounted for." Yet, neither in the audit nor in the testimony is there anything to show that there was ever an audit made of the treasurer's books.

So far as the record shows, there was no reason why the treasurer could not testify or produce the books to show the amount of money received from Myrtle Bullard.

The first bond, that one dated May 1, 1921, was conditioned that Myrtle Bullard "pay over all moneys that shall come into her hands as such clerk, as required by law."

There was no competent testimony concerning either of the other bonds alleged to have been executed. It was attempted to be shown by a soliciting agent that he collected the premiums for two other bonds, but no witness testified as to the provisions of those bonds, and the bonds were not offered in evidence. He was asked where the bonds were, and he answered that he did not know. There was no testimony in the record from which any judgment could be sustained on the second and third bonds. No town officer took the stand or testified in this case, and the official whose duty it was to have the bonds in custody did not

testify that he did not ·have the bonds. There was an absolute want of evidence as to the existence or the terms of the second and third bonds.

There was no competent evidence in the record as to the Southern Surety Company that Myrtle Bullard did not pay over all moneys coming into her hands as required by law. For that reason, the motion of the Southern Surety Company for a new trial should have been granted.

In view of the public question involved herein, this court declines to direct a judgment to be entered for the defendant. There is nothing in the record that will support the judgment rendered in this case, and a new trial must be had.

There are many other contentions made in the briefs, but we do not consider it necessary to discuss them further than to say that when the Southern Surety Company signed the surety bond shown by this record, it assumed a liability in accordance with the terms of the instrument. If there has been a defalcation by the principal obligor, it is doubtless susceptible of proof, but it may not be proven by only the conclusion of an auditor as to what he finds from an examination of books and records. If subsequent bonds were executed, that fact is capable of proof and, if the original instruments cannot be produced, upon proper proof thereof, secondary evidence of the contents may be received.

This cause is reversed and remanded to the district court of Johnston county, with directions to vacate the judgment against the Southern Surety Company and to grant a new trial.

LESTER, C. J., and CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and HEFNER, J., absent. RILEY, J., not participating.