## No. 12,896.

FARMERS RESERVOIR AND IRRIGATION COMPANY *v.* TOWN OF
LAFAYETTE ET AL.
(24 P. [2d] 756)

Decided August 2, 1933.

174

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, for plaintiff in error.

Messrs. MARTIN, NEWCOMER & FITZGERALD, Messrs. Goss & HUTCHINSON, for Town of Lafayette.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the company and defendant in error, the town of Lafayette, as the town. The Howard Ditch Company appears in the litigation only by reason of the fact that a stipulation signed by it relative to its rights, so far as they were touched by the decree, was filed herein.

The town, a municipality with a population of about 1800, brought this action to change the point of diversion of certain of its water which it uses for domestic purposes. The company, having an appropriation for irrigation from the same stream and claiming the change would be detrimental to it, protested. The cause was tried to the court which made general and specific findings and entered a decree for the town accordingly,

granting the change upon "terms and conditions." To review that judgment the company, insisting that the record shows it is still "injuriously affected," and that its demurrer to the petition should have been sustained, prosecutes this writ.

This action was brought under sections 1706 and 1707, C. L. 1921. These authorize such a change if it will not "injuriously affect the vested rights of others," or, if it will, then only "upon such terms and conditions as may be necessary to prevent such injurious effect." The company was the only protestant. It and the Howard Ditch Company (a mutual company whose shareholders use their water for irrigation) both take their supply from South Boulder Creek. The former's priority is No. 35 on the stream, the latter's No. 1. The town formerly obtained its water from the same source through another ditch, carrying it through a pipe line for a distance of over nine miles. Finding this supply inadequate it bought six and one-half shares in the Howard company, whose decree was for 36 cubic feet per second for agricultural purposes, limited to the irrigation of 1000 acres. Of this the town, by virtue of its ownership of said six and one-half shares, is entitled to 2.34 cubic feet.

Of the four diversion points here involved, the lowest on the stream is that of the Howard ditch; next above it is the town's old pipe line intake; next above that is the intake of the company's ditch; and about 1200 feet above the latter, and six miles upstream from the headgate of the Howard ditch, is the town's new pipe line intake, here in question. A growing summer resort, discharging waste water and sewage into South Boulder Creek above the town's old pipe line intake, contaminated its water supply, hence this petition to move the town's diversion point above the point of said contamination, extending the length of its pipe line to about thirteen miles. Between the company's headgate and that of the Howard ditch are numerous others, diverting appropriations all

of which are senior to the former, and in time of scarcity these take the entire flow of the stream. A small portion of the Howard company's appropriation is supplied by return and seepage waters arising between its headgate and that of the company.

Some of the conditions attached by the decree herein were: That the town should not be allowed to draw more than 1.23 second feet at a time, or 260 acre feet per year; that this should not be taken save at such time as the Howard ditch would be entitled to it for direct irrigation under its decree; that it should not be taken when less than one cubic foot per second was in the stream passing the company's headgate; that no enlarged use of the Howard company's original appropriation should be permitted; that the town should have no preference over any other stockholder in the Howard company; and that the 36 cubic feet per second heretofore diverted by the Howard company through its headgate under its decree should be cut to 33.66 cubic feet.

The company contends: (1) That its general demurrer should have been sustained because the petition shows on its face a contemplated enlarged use of a different character; (2) that the record and decree show the same adjudged to its injury; (3) that the Howard company should have been made a party and its claim of that company's abandonment of a portion of its decreed priority litigated.

The law here applicable is, we think, well settled. In fact it is wholly undisputed in the briefs. The town had the burden of showing no injury. *City and County of Denver v. Colo. L. & L. Co.*, 86 Colo. 191, 279 Pac. 46.

Return waters should be taken into consideration in determining the right of lower senior appropriators to have their full decreed priorities pass the headgate of upper junior appropriators. *Vogel v. Minn. Canal & Res. Co.*, 47 Colo. 534, 107 Pac. 1108.

Abandonment, heretofore excluded as an issue in actions to change the point of diversion of decreed rights,

may now be shown. *Fort Lyon Canal Co. v. Rocky Ford etc. Co.,* 79 Colo. 511, 246 Pac. 781. Rule 25 of the rules of this court.

■ Junior appropriators cannot complain of changed conditions which inflict no substantial injury upon them. *City and County of Denver v. Colo. L. & L. Co., supra.*

■ The right of petitioners to such changes, "depends largely upon the facts of each particular case," and a decree granting a change, based upon competent testimony, will not be disturbed. *New Cache la Poudre Irr. Co. v. Water Supply and Storage Co.,* 49 Colo. 1, 111 Pac. 610.

■ 1. The demurrer would be good only if the petition showed on its face the impossibility of imposing "terms and conditions" which would obviate any injury to vested rights otherwise incident to the proposed change. It does not.

■ 2. The otherwise enlarged use incident to the change in duty, i. e., agricultural to domestic and variable to regular, is taken care of by limitations in the decree above mentioned. The amount changed is deducted from the amount the Howard company may divert at its headgate under its decree. Loss to the stream and the element of return and seepage water are balanced by reduction of the amount the town may divert at any time at its new intake from 2.34 cubic feet (the amount represented by its shares in the Howard ditch, and the point of diversion of which is changed by the decree) to 1.23 cubic feet; and further by the order to take nothing unless one cubic foot is passing the company's headgate. The company's principal complaint is that while the court found 4000 acre feet to be the amount annually diverted by the Howard company, the decree, without reducing this, permits the town to divert 260 acre feet annually through its new pipe line. Hence it is argued that, irrespective of the reduction in cubic feet per second, an annual enlarged use to the extent of this 260

acre feet is thus permitted. The following portions of the decree refute this: "That nothing in this decree shall be construed to authorize any enlarged use of the water awarded to said Howard Ditch under said original decree of June 2, 1882, either in quantity of water diverted or in time of use thereof; * * * that there shall never be diverted from said South Boulder Creek by said petitioner at its new pipe line intake, by virtue of the ownership of said stock any greater quantity of water, measured in second feet, than the amount which will be equivalent to sixty-five one-thousandths (65/1000) of such quantity of water as may be available from South Boulder Creek under the priority awarded to said Howard Ditch by said decree of June 2, 1882."

3. It was alleged that the Howard company had abandoned a portion of its original appropriation and it is contended that the company's motion to make it a party should have been granted and this issue of abandonment adjudicated. But there is no contention that the particular water whose point of diversion is changed by this decree, has been abandoned, or that, granting the alleged abandonment, the Howard company has not a good claim, under its original decree, to many times the amount here involved. Hence the company is amply protected by the provisions of the decree above mentioned. Our rule 25, concerning trial of an issue of abandonment in actions to change the point of diversion, was not intended to convert such an action into a general abandonment adjudication, but only to permit the consideration of alleged abandonment so far as it should affect the change sought. It does not affect it here at all. If the Howard company has abandoned a portion of its priority and hereafter seeks to resume it to the detriment of the company, the latter may raise that question in a proper suit and therein the town will, under the terms of the decree in the instant case, stand on an equal footing with all other stockholders in the Howard company.

All presumptions are in favor of this judgment and nothing in the record indicates that the terms and conditions imposed by the court do not amply secure the company and the stream against any injury or depletion otherwise incident to the change granted.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.