## No. 15,118.

FLASCHE ET AL. *v.* WESTCOLO COMPANY ET AL.

(149 P. [2d] 817)

Decided May 22, 1944.   Rehearing denied June 19, 1944.

Mr. FRANK DELANEY, for plaintiffs in error.

Mr. ALLYN COLE, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFFS in error, herein designated as petitioners, instituted an action in the district court to change the point of diversion of water, priority No. 153A awarded to the Hobo ditch under decrees of the district court of Garfield county, to a point 940 feet upstream to the headgate of a ditch called the New Hobo ditch. Certain junior appropriators, the headgates of whose ditches were located above both the headgate of the Hobo ditch and the proposed headgate of the New Hobo ditch, protested the change.

Petitioners owned also a later flood water right, 181EE of the same priority date as flood water rights owned by protestants. The district court authorized the

change of diversion for the flood water right, but denied the change as to priority No. 153A. To reverse the judgment denying the change in the point of diversion of priority No. 153A petitioners prosecute a writ of error.

The Hobo ditch derives its supply of water from Roan creek at a point approximately one mile above the confluence of Roan creek and Clear Creek. Above the confluence of the two streams Roan creek flows in a general southeasterly direction and Clear Creek flows in a general southwesterly direction. With the exception of a small tract of land, about 26 acres, lying but a short distance south of the Hobo ditch and in a southwesterly direction from the headgate of the Hobo ditch, the lands originally irrigated by the Hobo ditch and proposed to be irrigated by the new Hobo ditch, lie south of the confluence of the two creeks and on the easterly side of Roan creek as the stream is known after Clear Creek flows into it. The water in Hobo ditch as originally constructed, flows from the headgate, which is on the east, or northeast side of Roan creek, around the foothills in a general easterly direction to Clear Creek. Originally, the water was carried across Clear Creek by a flume, and then in an easterly direction through a ditch to the Clear Creek ditch running in a southerly direction which canal served as a carrier ditch for the Hobo ditch water. The headgate of the Clear Creek ditch was located a short distance above the flume on the easterly side of the stream. From the Clear Creek ditch the Hobo ditch water, priority No. 153A, and also the flood water of the later Hobo decree 181EE were diverted into the High Line Ditch and from thence to petitioners' lands.

The Hobo ditch had but little fall. It passed through an adobe, or clay soil containing gypsum. Large holes occasionally appeared in the sides of the ditch, as a consequence of which, it was difficult to maintain, and frequent breaks occurred causing interruptions in the use of water conveyed through it. With intermittent inter-

ruptions due to these breaks throughout the entire length, the Hobo ditch was used from 1910 until some time in the year 1923. In 1923 the flume across Clear Creek washed out. Thereafter, a pipe line was installed in place of the flume and this was used until 1925 when it also was washed away.

From the point to which the diversion is sought to be changed the water, if the change is granted, will be conveyed through a ditch known as the New Hobo ditch which will follow a course approximately parallel to the Old Hobo ditch in an easterly direction to Clear Creek where the diverted water will enter that stream at a point a short distance above the headgate of the Clear Creek ditch through which it will then be diverted into the Clear Creek ditch and thence carried to the land in the same manner as when it was flumed across Clear Creek from the old Hobo ditch and into Clear Creek ditch at a point blow its headgate. Running the water into Clear Creek at a point above the head of the Clear Creek ditch does away with the necessity of the flume required under the old diversion system.

Since the destruction of the pipe line in 1925, no water diverted through the Hobo ditch has been used on the lands lying east of Roan creek and south of its confluence with Clear Creek theretofore irrigated by the water from the Hobo ditch (priority No. 153A) and now again proposed to be irrigated by the same priority diverted through the New Hobo ditch.

The specification of points pertinent to review may be summarized as follows:

I. The Court erred in holding, without determining the issue of abandonment, that the failure of petitioners to use the water precluded them from obtaining a change in the point of diversion.

II. The Court erred in holding that the protestants acquired any vested rights to use water required to satisfy petitioners' decree by reason of petitioners' in-

termittent use of water due to difficulty in maintaining the ditch.

III. The Court erred in holding that the issue of abandonment was limited to nonuse, or manner and extent of use, and, in effect, holding that there was some middle ground short of absolute abandonment which would deprive petitioners of the right to obtain a change in the point of diversion.

The protestants alleged, and introduced evidence which they contend shows, an abandonment of priority No. 153A. Under our Rule 99, this is a matter that properly may be litigated in a suit to change the point of diversion. *Farmers Reservoir and Irrigation Co. v. Town of Lafayette*, 93 Colo. 173, 24 P. (2d) 756. The district court did not determine the issue of abandonment and held it improper to do so. This ruling was error. If petitioners had abandoned their decreed right to water, thereby surrendering it to the stream, they no longer had the right to divert water either at the old or the proposed new point of diversion and if they had no right to divert any water, it would be futile to determine whether protestants would be injuriously affected if they diverted it at one point rather than another.

The applicable statutes, sections 104, 105, chapter 90, 1935 C.S.A., provide that a change may be granted only when it does not injuriously affect the vested rights of other appropriators from the stream. *City and County of Denver v. Colorado Land and Livestock Co.*, 86 Colo. 191, 279 Pac. 46; *Vogel v. Minnesota Canal and Reservoir Co.*, 47 Colo. 534, 107 Pac. 1108. Whether a proposed change will do so, must depend upon the facts of each particular case. *Farmers Reservoir and Irrigation Co. v. Town of Lafayette, supra; New Cache la Poudre Irrigating Co. v. Water Supply and Storage Co.*, 49 Colo. 1, 111 Pac. 610. Under the peculiar facts of *Farmers Reservoir and Irrigation Co. v. Town of Lafayette, supra,* we held it not necessary to determine the question of abandonment. Therein it was

pointed out that the *particular* water sought to be diverted at another point was not alleged to have been abandoned, and further that the contention was merely that the Howard Company, from which the town acquired by purchase the water it proposed to divert at a new point, had abandoned a part of a large appropriation, and that even if such were the case, the decree provided that the town should have no preference over any other stockholder in the Howard Company as well as scaling down the diversion by approximately fifty per cent as a condition for the change, and that this amply protected plaintiff in error in that case. The real basis of the decision is not that the trial court should not have determined the question of abandonment, but that under its facts protestant was not prejudiced by the failure to do so.

Since the fact is undisputed that petitioners in the instant case have a decree, 153A, senior to those of protestants, entitling them to divert seven second feet of water at the headgate of the Hobo ditch, then all that the trial court held and determined by the decree before us must be considered, having in mind the fact that it was done on the assumption that petitioners presently are entitled to exercise their decreed right by diverting at the Hobo headgate at any time proper for irrigation of their lands the seven second feet of water awarded to them by their decree. So assuming, the trial court found from the evidence that if the diversion point were changed an enlarged use of water would result, or that the "manner and extent of use" would be changed, to the injury of protesting juniors' vested rights. Since the same question will arise if on a subsequent hearing the court shall find there was no abandonment or a partial abandonment only, we deem it necessary to consider that question, and what is said hereafter in this opinion is on that assumption, without indicating any view on the question of abandonment.

We think it clear from the record before us that it

is immaterial to protestants, if petitioners have a right to make a diversion of any water at all for any given time, whether this is done at the Hobo headgate or at the New Hobo headgate 970 feet up the stream. The stream receives no increment between the old and the proposed new point of diversion. There are no diversions at all between these points. No question of return flow is involved, for the water is to be used on the same land and any seepage from either the land or the New Hobo ditch will find its way to the stream in the same manner as heretofore. Therefore, protestants are affected only by the time and amount of headgate diversion and the effect of this is the same whether made at one point or the other.

■ ■ The decree awarding priority No. 153A is evidence of the fact that an appropriation was made for irrigation purposes of the amount of water decreed which includes the fact of its having been applied theretofore to a beneficial use. The evidence discloses that up to 1925, with intermittent interruptions due to physical conditions and storms and washouts beyond petitioners' control, it was continuously so used. It was during this period of use that protesting juniors acquired their rights. These interruptions were misfortunes to petitioners that of course inured to the juniors' benefit. It would be a strange construction of the rule of law that gives them a vested right to a continuance of conditions on the stream to hold that it is broad enough to vest them with the right to a continuance of the senior petitioners' misfortunes with their ditch; and that if these misfortunes, as now has occurred, arrive at the stage of calamity, they become vested with the right to, and benefit of, the water of which the senior by such calamity has been deprived. To deny petitioners, in the absence of abandonment, the right to repair and improve their old diversion system and take all the water that has been decreed to them would be a denial of their property rights. Repairing the old works

as against protestants would not constitute an enlarged use or a violation of the juniors' right to a continuance of conditions as they existed on the stream. If the same result may be accomplished by a new ditch and a changed point of diversion, without any other or different effect on protestants than would be caused by improving the present system, can it be said that this is an enlargement of the use that injuriously affects them? We think not. Since it is only the amount and time of headgate diversion that affects protestants, whatever the amount and time of headgate diversion petitioners are entitled to make at the Hobo headgate they are entitled to make at the proposed new Hobo headgate.

In *Trinchera Ranch Company v. Trinchera Irrigation District*, 83 Colo. 451, 266 Pac. 204, one of the cases strongly relied upon as supporting the trial court's finding that an enlarged use would result if the change were made, speaking through Mr. Justice Butler, we said: "In such proceeding, in order to enable a court to determine whether or not the proposed change would injuriously affect the vested rights of junior appropriators, certain *data* are of importance, e.g., the size and capacity of the ditches from which and to which the change is sought; the quantity of water used, and the quantity it is intended to use after the change; the place where and the acreage upon which the water was used, and the place where and the acreage upon which it is intended to use the water after the change; the periods of non-use between successive irrigations of the land; the time of intended future use; excessive use, if any; the character of the soil at the place of present use, and at the place of future use; the kind of crops raised at the place of present use, and, so far as it is practicable to state it, the kind of crops intended to be used after the change is made. Scarcely any of these matters are in evidence here. Not that all, or even a large part, of such matters must be proven in order to show that the

vested rights of others would not be prejudiced by the change; but much more is required than has been proven in the present case. It may fairly be said that here there is no proof· whatever of matters absolutely necessary to enable a court to find that the vested rights of the protestants would not be injuriously affected if the proposed changes were permitted." What was there said, must be read and construed in the light of the situation under consideration. It will be noted that we found the record in that case, in which the trial court permitted the change, wholly lacking in evidence of facts to show that no injury to the vested rights of junior appropriators would result from the change. Then we set out certain facts or data as having a possible bearing on the question of whether the change would injuriously affect protestants. In so doing, we stated that we did not intend to hold that all, or even a large part, of them must be shown, to prove no damage. The case was reversed and the real ground therefor was that there was not sufficient evidence to support the decree. The suggested factual possibilities were intended simply by way of illustration to indicate to the trial court and counsel, in the event of a retrial, the general character of evidence that would enable the court to determine the question of whether damage would result. In brief, the limitation, or our caution that every suggested item of data need be proved, is a pronouncement that each case must be determined on its own peculiar facts.

Consider the facts suggested as pertinent as applied to the instant case. First: "The size and capacity of the ditches." If the old ditch is incapable of carrying the decreed water and the proposed ditch would carry more, this in and of itself would not necessarily be sufficient to defeat an application for change. It might suggest merely the necessity of a scale down of headgate diversion, as a condition for the change. Second: "The quantity of water used, and the quantity it is intended to

use after the change," is particularly applicable where the water is to be applied to different land; but where the use is to be on the same land it is limited, as we have held in *Baker v. City of Pueblo,* 87 Colo. 489, 289 Pac. 603, to the requirements of good irrigation usage regardless of the decree. Whether conveyed through one ditch or another, the limitation of use on the same land would be the same. Three: "The place where and the acreage upon which the water was used, and the place where and the acreage upon which it is intended to use the water after the change," can have no application where it is to be used on the same land. Four: "The time of intended future use," is limited by the irrigation season and good irrigation usage, and can have no application where there is no proposed usage on different land. Fifth: "The periods of nonuse between successive irrigations of the land," would be applicable if there were a projected transfer of application from one tract of land to another potentially capable of producing different crops requiring more frequent irrigation, but not when applied to the same land. Sixth: "The time of intended future use," also is limited by the decree, good irrigation usage, and the crop potential of the same land, where not intended to be applied to different lands. Seventh: "Excessive use, if any," could have an effect only on return flow not involved in the instant case. Eighth: "The character of the soil at the place of present use, and at the place of future use;" "the kind of crops raised at the place of present use," and "the kind of crops intended to be used after the change is made," both connote application to other land, a condition not present in the case before us. None of the factors suggested as proper for consideration are shown to be operative in the present case.

Counsel for protestants rely on *City and County of Denver v. Colorado Land and Livestock Co., supra,* as authority for the proposition that though at great and prohibitive cost one might divert at one point, it

does not necessarily follow that there is a right to divert at another. It does not *necessarily* follow because there may be other factors to be taken into consideration, but if it is immaterial to protestants otherwise in that it casts no greater burden on their rights to withdraw the same quantity of water at one point than at the other, the proximate cause of the injury, or, more accurately speaking, the added burden they·sustain is not the change of point of diversion, but the fact that petitioner for the change is exercising a senior right. This is, of course, an injury or burden for which there should be, and under the law is, no recourse. It is a burden inherent in our priority system. The case relied upon is not authority to the contrary. It is in nowise· analogous on the facts to the case before us. The city of Denver owned a consumptive reservoir storage right and a non-consumptive power right of very early priority on the Platte river. The reservoir was above the headgate for the power right. It was proposed to change the point of diversion of the power right several miles upstream to the headgate of the ditch through which the storage rights were conveyed. Of the protestants, some were above, some below and, inferentially, some between both the old and proposed new point of diversion. The reservoir was a leaky reservoir. It was intended to use a part of the non-consumptive power appropriation for storage to compensate for the volume of consumptive water lost by leakage and a part to supply the loss of consumptive water in various filters. It is apparent that the proposed change and use resulted in changing a non-consumptive appropriation to a consumptive appropriation which could not fail to injure juniors lower down on the stream by reducing the water available to them. In the instant case it is sought to change the point of diversion of water to be applied to a consumptive use on the same land to which it was consumptively applied before the change. If the petition in the case cited had been to move the point of di-

version of the consumptive storage appropriation a few hundred feet up stream, the water still to be stored in the same reservoir, then it would be somewhat analogous to the instant case and much of what was said in the opinion would have no application to that kind of a factual situation.

The judgment of the court granted the petition for change of diversion of petitioners' flood water right 181EE, but required petitioners to elect within twenty days after the entry of judgment "as to whether they elect to make such change in view of the refusal of the court to also permit the change with respect to priority No. 153A." This time should be extended so that petitioners have the right of election, in the event they shall carry the court's judgment to this court by writ of error, for a reasonable time after the remittitur is returned.

Having held that it was error for the court to decline to determine the issue of abandonment, it necessarily follows that the judgment should be reversed in so far as it denied the change of point of diversion of priority No. 153A; in so far as it changed the point of diversion of 181EE, it is affirmed. Further proceedings shall be consistent with the views herein expressed, but this opinion, which is based on the judgment of the court on the record before us, should not be construed as precluding the introduction of additional evidence, if such there be, pertinent to the issue of abandonment, or enlarged use.

Judgment reversed in part and affirmed in part and cause remanded.