No. 16,734.

CITY OF COLORADO SPRINGS v. YUST ET AL.
(249 P. [2d] 151)

Decided September 22, 1952. Rehearing denied October 14, 1952.

Mr. F. T. HENRY, Mr. A. W. McHENDRIE, for plaintiff in error.

Mr. FRANK DELANEY, Mr. JOHN B. BARNARD, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

THE City of Colorado Springs petitioned for change of point of diversion of certain water rights from several tributaries of the Blue River, decreed to the East Hoosier and West Hoosier Ditches. It was alleged . that such

change would not injuriously affect the vested right of other appropriators. Yust, the Colorado River Water Conservation District and Hill, filed protests. After hearing, the court found that petitioner had failed to establish the fact that the proposed transfer and change of point of diversion as prayed for would not injuriously affect the vested rights of others, and therefore denied the petition.

■ In seeking review of the judgment below, it is urged that the trial court erred in denying motion to strike from the protest of the Colorado River Conservation District and from the protest of Clayton Hill, their third grounds of protest, based upon the asserted claim that the decrees granting petitioners said water rights were entered without jurisdiction and in excess of the authority of the court, in that said decrees were without limitation as to the times of use or the respective amounts to be used for each of the several purposes for which the decrees were awarded. Assuming that such ground of protest should have been stricken, failure so to do did not constitute reversible error for the reason that the court made no finding adverse to petitioner, or at all, on said ground of protest; further, it denied petitioner's motion to strike, with permission to renew later, and we are not advised that the motion was thereafter renewed.

■ Error is predicated also upon the admission in evidence, over objection, of protestants' exhibit 1, which consisted of records of diversions of the East Hoosier Ditch and the West Hoosier Ditch during certain years, certified by the State Engineer as true and correct copies of the records as they appear in the files of his office. Objection was made upon the ground that the data therein contained included that as to diversion of water for a period prior to the entry of the decree, and therefore was an attempt to modify or change the decree. Error is further specified to the admission in evidence of protestants' exhibits 2 and 3, being the ditch claim state-

ments which were the basis of the decrees for claimant's said water rights, and to the admission of protestants' exhibit 14, which was the testimony offered at the adjudication proceedings in support of the ditch claim statements in the proceedings in which claimant's said decrees were awarded. All these exhibits were offered, not only for the purpose of challenging the decrees, which was improper, but also for the purpose of the use of the water both before and after the decree. As we said in *New Mercer Ditch Co. v. New Cache La Poudre Irr. Co.,* 70 Colo. 351, 201 Pac. 557: "Evidence of abandonment must, of course, be of facts which occur after the decree which awards the priorities, but previous conditions, declarations of the parties and the proceedings in the suit of which that decree is the result are competent to show conditions and intent subsequent to the decree." See, also, *Larimer County Canal Co. v. Poudre Valley Res. Co.,* 23 Colo. App. 249, 129 Pac. 248. We find no error in the action of the trial court in admitting these exhibits.

Further error is predicated on the asserted fact that there was no evidence to support the finding of the trial court. We think it unnecessary to attempt an analysis of the evidence admitted. The showing of interception of additional water and of additional time use hereinafter mentioned was sufficient to create an issue of fact as to increased use by virtue of the proposed change.

The one substantial challenge to the decision of the trial court, is the assertion of error in its failure to find whether or not the change in point of diversion could be granted without injury to other vested rights upon the imposition of proper terms and conditions.

In this semiarid region, a water right has long been recognized as a property right, often more valuable than the land upon which the water is applied. As our court said long ago in *Strickler v. Colorado Springs,* 16 Colo. 61, 26 Pac. 313, speaking through Hayt, J., "If the priority to the use of water for agricultural purposes is a

right of property, then the right to sell it is as essential and sacred as the right to possess and use." Equally inherent is the right to change the point of diversion and the place of use, provided only that the vested rights of others are not substantially affected thereby. "This right to use in times of scarcity a definite volume of water, in a fixed order of priority, from the natural streams, is one of the most valuable property rights known to the law of this state, which in no way depends on the place of its application, and is not confined to the land upon which the right came into existence; but may be sold separate from the land and changed from one place to another." *Ironstone Ditch Co. v. Ashenfelter,* 57 Colo. 31, 140 Pac. 177. Right to change the point of diversion is one of the incidents of ownership and exists independently of statute (*Lower Latham Ditch Co. v. Bijou Irr. Co.,* 41 Colo. 212, 93 Pac. 483), but is properly subject to a statutory regulation. *Farmers' Highline & Res. Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291. The inherent right to change the point of diversion includes not only the right to change without condition, if such change can be made without substantial injury to the vested rights of others, but also the right to change subject to conditions, if injury to rights of others may thereby be avoided. "If such injury appear, the court shall decree the change only upon such terms and conditions as may be necessary to prevent such injurious effects, and if impossible to make such terms and conditions, the application must be denied." *Bates v. Hall,* 44 Colo. 360, 98 Pac. 3. See, *Tanner v. Humphreys,* 87 Utah 164, 48 P. (2d) 484. The statute affirms that right: "If it shall appear that such change will not injuriously affect the vested rights of others, the change shall be permitted by the decree to be given by court. If, however, it appears that such change will injuriously affect the vested rights of others, the court shall deny the application unless the court is satisfied that by the imposition of terms and conditions such injurious effect may be

prevented, in which case the court shall decree the change upon such terms and conditions." S.L. '43, chapter 190, section 24. Such right is not challenged by protestants here, but it is insisted that it was incumbent on petitioner to propose in his petition the terms or conditions which would prevent injury, and *Huerfano Ditch & Res. Co. v. Welton Land & Water Co.*, 73 Colo. 103, 213 Pac. 998, is cited as supporting the contention that the petition was demurrable without such specification of terms. Any question as to such interpretation is resolved by the opinion in *Farmers Reservoir & Irr. Co. v. Town of LaFayette*, 93 Colo. 173, 24 P. (2d) 756, where the court, speaking through Burke, J., who also wrote the opinion in the Huerfano case, said: "The demurrer would be good only if the petition showed on its face the impossibility of imposing 'terms and conditions' which would obviate any injury to vested rights otherwise incident to the proposed change. It does not."

The water rights here involved were originally obtained by petitioner's predecessor for use outside the drainage basin of the Blue River. The East and West Hoosier Ditches, running athwart the streams, caught the water from numerous small tributaries at a high elevation and carried it to Hoosier Pass across which it was taken to the place of use; consequently, there is no question involved as to loss of seepage or of return water. By means of the proposed change the greater part of the water would be diverted at a point some 500 feet lower on the streams and taken through the divide by means of a tunnel. The new ditch system taking the water lower down on the streams would intercept the drainage from 830 acres, having an average elevation of 11,400 feet, the waters from which are not intercepted by the present ditches. The runoff from that area would come earlier in the season than that from the higher areas and permit longer season use of the water.

The only injury alleged or asserted by protestants is that claimed to result from enlarged use in

time and volume by petitioner. The amount of such enlarged use, and the resultant injury, if any, to protestants, would appear to be approximately ascertainable. Petitioner here introduced evidence as to the extent of additional water intercepted by means of the proposed change and resultant injury, which protestants permitted to go unchallenged. Under such circumstances, change of point of diversion should be decreed subject to condition which would compensate protestants for such injury. Dismissal of petitioner's action would result either in his being deprived of a valuable property right or in the necessity of his bringing another action involving the same parties and the same evidence to determine the same issue which was before the court in this proceeding. Our court has said: "An application for change of point of diversion of water having been judicially determined, may not again be litigated as to its injurious effects on the rights of others." *San Luis Valley Irr. Dist. v. Centennial Irrigating Ditch Co.*, 84 Colo. 502, 272 Pac. 9. In a like proceeding, where the rights of protestants rather than petitioner were involved, our court of appeals said: "Litigants should not needlessly be sent from court to court in search of an appropriate proceeding, but their rights should be settled when the parties are before the court. Such is the policy of the law, and we perceive no obstacle thereto inherent in this proceeding. The former opinion will be withdrawn, the judgment reversed and the cause remanded to the district court, with instructions to ascertain and determine the quantity of water necessary to properly irrigate the land owned by petitioners heretofore irrigated from the Canon ditch,·and also that lying between the line of the Canon ditch and the Poudre Valley canal, in all not to exceed 300 acres, and to enter a decree permitting the change in point of diversion of that quantity only; and, if necessary, that additional testimony be taken to ascertain such quantity." *Larimer County Canal Co. v. Poudre Valley Res. Co.*, 23 Colo. App. 249, at 264, 129

Pac. 248. We think in such a proceeding, upon showing of substantial injury, the court should either make finding on a supporting record that the injurious effect of the change sought cannot be prevented by the imposition of terms and conditions, or should decree the change upon compensating terms and conditions.

 Protestants, in turn, insist that petitioner's evidence did not establish that no injury would result to the vested rights of others; that no competent evidence was introduced to establish the allegation of the petition, and that denial of change by the court was therefore necessary. The burden of proof on petitioner in such a proceeding requires him to meet only the grounds of injury to protestants asserted by them. As said by the Utah court, in *Tanner v. Humphreys, supra:*

"In an application for a change of diversion, it is not necessary for a party so applying each time to make a showing that it has beneficially used its water right. If it has not, then the protestants may so show. It is assumed that where the water has been used upon the land for which it is diverted, that such amount was beneficially used.

* * *

"It would be impracticable to require the plaintiff to ferret out all of the ways in which the others might perchance be injured and offer proof in negation thereof as a part of its affirmative case. The general negative as against injury to the protestants is sufficient to carry the case over a motion for a nonsuit in that respect."

 We think the testimony of petitioner's witness Debler, as to the effect of the change, based upon many years of study and experience in hydrology investigation and upon study of the area, ditches, runoff and appropriations involved, was properly received by the trial court and constituted prima facie evidence to satisfy the burden of proof resting on petitioner.

The judgment is reversed and the case remanded with direction to the trial court to determine, upon the evi-

dence already taken, together with any additional evidence the parties may see fit to introduce, whether change of point of diversion as prayed for will injuriously affect the vested rights of protestants, and, if so, whether such effect may be prevented by the imposition of terms and conditions, and enter a decree accordingly.