360 P.2d 417 (1961)
James Henry MANNON, Gertrude Edith Mannon and William Henry Vaughn, Plaintiffs in Error,
v.
FARMERS' HIGH LINE CANAL AND RESERVOIR COMPANY et al., Defendants in Error.
No. 19125.
Supreme Court of Colorado, En Banc.
February 6, 1961.
Rehearing Denied April 3, 1961.
*418 Bradley, Carney & Johnson, Golden, Lee, Shivers & Banta, Englewood, for plaintiffs in error.
Gaunt, Byrne & Dirrim, Brighton, for defendant in error Lee, Stewart and Eskins Ditch.
Henry & Adams, Victor Quinn, Denver, for defendants in error Agricultural Ditch & Reservoir Co., Golden Canal and Reservoir Co. and Consolidated Mut. Water Co.
Glenn A. Laughlin, James F. Friel, Denver, for defendants in error Farmers' High Line Canal & Reservoir Co., Lower Clear Creek Ditch Co. and Colorado-Agricultural Ditch Co.
DOYLE, Justice.
This writ of error is directed to the district court of the City and County of Denver to review a judgment dismissing the petition of plaintiffs in error, who will be here referred to as petitioners. The petition filed pursuant to C.R.S. '53, 147-9-22 sought a modification of a water decree by changing the point of diversion. Hearing was had and at the conclusion of the petitioners' evidence the court entered an order dismissing the petition, and on that occasion made informal findings holding:
1. That the burden was on the petitioners to show lack of damage.
2. That this burden had not been satisfied.
3. That it was apparent that damage to certain of the defendants in error, here referred to as respondents, from the standpoint of both storage and operational rights, had occurred.
4. That specific damage occurred to the holdings under the Lee, Stewart and Eskins Ditch and that it appeared that 63 acres would be dried up.
5. That there would be increased burden of use of the water itself, both in flow and in time.
6. That there might be additional damage once the water was put to use by the City of Golden.
7. That petitioners failed to satisfy the burden imposed upon them by law to show that conditions could be imposed which would protect against resulting injuries.
The trial court also expressed doubt as to the sufficiency of the proof with respect to ownership of the water. The court did not, however, find or conclude that the plaintiffs had failed to prove title.
The petitioners sought to transfer a total of 2.86 cubic feet per second of time from a point on Clear Creek just below the City of Golden to a point on the creek above the city. The proposal was to supplement Golden's domestic water supply. At present the point of diversion is the headgate of the Lee, Stewart and Eskins Ditch. The proposed change is the headgate of the Church Ditch.
Although the petitioners contend that the issue of sufficiency of their title was not a valid one at the trial, they nevertheless produced evidence to establish it. It was shown that in 1884 there was an adjudication of water rights of Clear Creek awarding 9.9 c. f. s. for irrigation of the SW ½ of the NW ¼ of Sec. 24, Twp. 3 S, Range 69 W to Fred Claus and S. F. Couch. Subsequently there was a decree entered in 1906 changing the point of diversion. Sophia Churches was granted permission to transfer 1.3 c. f. s. of a total of 3.9 c. f. s. from the Claus and Couch Ditch to the headgate of the Golden Ditch. In 1908 there was a second transfer proceeding involving the water in question here. At that time, Sophia Churches, Lena Thuet, Adam C. Shock and Samuel H. Shock were granted permission to change the point of diversion of 8.6 c. f. s. (the remainder of the Claus and Couch appropriation) from the Claus and Couch Ditch to the headgate of the Lee, Stewart and Eskins Ditch. The 1884 decree did not purport to determine the proportion of the total of 9.9 c. f. s. which was owned by Claus and Couch individually. They rely, in this connection, on a quitclaim deed executed on May 1, *419 1889 wherein Couch conveyed to Adam C. Shock:
" * * * the following described property * * * an undivided one-half (½) interest in and to the Claus and Couch Ditch as per the record of said Ditch, as approved by decree of the District Court of the Second Judicial District of the State of Colorado, dated October 4th 1884."
Petitioners contend that this deed conveyed a 4.95 c. f. s. water right to their predecessors. They argue that the reference to the 1884 decree in the description referred to the water right itself.
In support of their contention that ownership of the ditch cannot be determined in a statutory water adjudication, petitioners cite Robinson v. Alfalfa Ditch Co., 89 Colo. 567, 5 P.2d 1115. They further argue that the deed does not refer to the location of the ditch and does not purport to convey any real property or right of way and that it therefore was intended to transfer the water right itself. A subsequent instrument is a quitclaim deed dated in 1908 from Adam C. Shock to Samuel H. Shock which conveyed:
"The following described ditch and water rightsAn undivided one sixth (1/6) interest in and to the Claus and Couch Ditch as per record of said ditch as appears by decree of the District Court of the Second Judicial District of the state of Colorado entered October 4th 1884. Together with an undivided one sixth (1/6) of the waters appropriated from Clear Creek for said Claus and Couch Ditch as decreed thereto."
Since one-sixth of 9.9 would be 1.65, the petitioners argue that this divested Adam Shock of 1.65 c. f. s. and vested this quantity in Samuel Shock.
Adam Shock died in 1911 and his heirs were found to be his widow, Margaret Shock, and three children, Samuel H. Shock, Cora M. Mannon and Emma J. Legault. Petitioners contend that the legal result of this was that Margaret Shock inherited a water right amounting to 1.65 c. f. s. and that each of the children inherited a right of .55 c. f. s. Margaret Shock died in 1931 and her heirs were the three children named above. Thus each of the three children acquired .55 c. f. s. as a result of her death so that Cora and Emma then had 1.10 c. f. s. and Samuel had 2.75 c. f. s. Samuel Shock died in 1941. His sole heir was his widow, Sally E. Shock, who passed away in 1942 leaving a will in which her son, William H. Vaughn, was the residuary devisee and legatee. It is said that the residue transferred by this will included 2.75 c. f. s.
The share of Cora passed to her then husband, Milton Dormer, and her son, James Henry Mannon. The final document which petitioners rely on to establish their title is a quitclaim deed executed in 1937 in which Milton Dormer and Emma Legault (who then owned a total of 1.65 c. f. s.) conveyed to James Henry Mannon two parcels of land
"Including and hereby conveying any and all water, water rights, ditch, ditch rights, reservoir and reservoir rights appurtenant to and used for and upon the above described parcels."
Based upon the described events and instruments, petitioners contend that William H. Vaughn is the owner of 2.75 c. f. s. and that James Henry Mannon is the owner of 2.20 c. f. s.
In attacking this chain of title, respondents assert that the quitclaim deed of 1889 does not pass the title and, in addition, they maintain that a warranty deed from Adam Shock to Samuel Shock was also insufficient.

I.
The preliminary question to be determined is whether the question of title is a proper one in a statutory proceeding. In arguing that it is not an issue, petitioners cite Farmers Highline Canal & Reservoir Co. v. City of Golden, 129 Colo. 575, 272 P.2d 629, 631 wherein it was said:
" * * * Proceedings of this nature are not adaptable for the purpose of trying title." *420 The court pointed out that the petitioners' showing in that case was sufficient to establish prima facie ownership.
The case of Bates v. Hall, 44 Colo. 360, 98 P. 3, 5 holds that a condition to the bringing of such a proceeding is that the petitioners show their right to the use of such water. There the court said:
"To decree in favor of such change where the volume is not fixed would probably lead to useless litigation between rival claimants and the water commissioner."
Upon the basis then of reason and authority it must be concluded that the petitioners are required to prove ownership.

II.
The next question is whether the showing was sufficient and the first inquiry is whether the conveyance of the right of way for all ditches and the right to run water through said ditches also conveyed the water right. In a like fact situation this Court held in Arnett v. Linhart, 21 Colo. 188, 40 P. 355, that a conveyance of a one-half interest in the ditch carried with it a like interest in the water right when a deed was silent as to the water right; the intention of the grantor being presumed from the circumstances where the transfer of that right was necessary to the enjoyment of the interest conveyed. The Arnett case seems to be authoritative as to the present question and must be regarded as particularly persuasive because it is contemporary to the instruments which are here in question. The reference in the deed of 1889 to the 1884 decree leaves little room for doubt that the subject matter of the conveyance was a one-half interest in 4.95 c. f. s. of water decreed to the Claus and Couch Ditch.
We are unable to see any substantial defect in the subsequent chain of title and as a consequence the contention of respondents that as a matter of law the petitioners failed to prove a prima facie case in this respect must be rejected.

III.
In dismissing the complaint the trial court ruled that
"The burden is on the petitioners to show lack of damage, and they have not, in the court's judgment, sustained that burden."
The pertinent statute, C.R.S. '53, 147-9-25, provides:
"* * * If it shall appear that such change will not injuriously affect the vested rights of others, the change shall be permitted by the decree to be given by court. If, however, it appears that such change will injuriously affect the vested rights of others, the court shall deny the application unless the court is satisfied that by the imposition of terms and conditions such injurious effect may be prevented, in which case the court shall decree the change upon such terms and conditions."
Noteworthy is the fact that the trial court did not find that "such injurious effect may not be prevented" by the imposition of terms and conditions. Its dismissal is based instead on the proposition that the burden was on the petitioners to show lack of damage. We conclude that this was erroneous.
On the question of injury, petitioners relied on the expert testimony of William W. Wheeler, a qualified hydrologist. He testified to the consumptive use that would be made prior to the transfer and to the use which could be made after the transfer. His conclusion was that there would be an increase of consumptive use of the water as a result of its being applied to domestic purposes in Golden, but that there could be compensation for this loss by abandonment of .84 c. f. s. to the stream. As to users between the old and new points of diversion, he testified that there would be no injury to direct flow rights as a result of the water bypassing their headgates if it proceeded through Golden and was discharged downstream at the outlet of the sewage plant. He based this conclusion on the fact that these users never depended upon any *421 return flow from this appropriation which was diverted below their headgates. In times of shortage they would, of course, be entitled to call for their water ahead of Golden if they had earlier priorities. The.84 c. f. s. was intended to compensate users below the Lee Ditch and the outlet of the sewage plant.
With respect to the Lee Ditch, the witness computed that the removal of 2.86 c. f. s. from the ditch would result in the drying up of the Vaughn and Mannon land plus an additional 63 acres. This result was reached by determining that 2.86 c. f. s. would irrigate 138 acres; that Vaughn and Mannon irrigated 75 acres and that the difference, 63 acres, was the number which would have to be dried up.
Certain protestants asserted that there would be an injury in their storage rights if Golden was allowed to take 2.86 c. f. s. during the entire year. Petitioners readily conceded injury but indicated their willingness to accept a condition that the water be used only during the traditional irrigating season in the areafrom May 1 to October 15. Certain of the protestants charged that it was possible for water that was not used by Golden to flow down the Church Ditch into another water shed and be lost completely to Clear Creek. Here again petitioners indicated willingness that a term be added to the decree limiting the diverted water to the City of Golden so as to prevent this loss. A further proposal by the petitioners was that the decree contain a provision requiring that .16 c. f. s. be left in the Lee Ditch to satisfy requirements of persons to whom they had conveyed small tracts, which conveyances had included the right to sufficient water to serve these tracts.
There are two main aspects to the problem of injury: First, injury to the rights of the users in the Lee, Stewart and Eskins Ditch, and secondly, the rights of the other appropriators on Clear Creek.
A. As to the users under the Lee, Stewart and Eskins Ditch, the petitioners take the position that the water which had been used in the past to irrigate the 63 acres which would have to be dried up was owned by them and was used by the owners of the land which would be affected on a permissive basis. In response to the contention that there would be a heavier burden of evaporation, seepage and maintenance on the users of the ditch, the petitioners contend that objections on this basis are insufficient as a matter of law. They cite Brighton Ditch Co. v. City of Englewood, 124 Colo. 366, 237 P.2d 116, 120 wherein it was held that in the absence of showing that the petitioners and protestants are shareholders in a mutual ditch company or in the absence of some other contractual limitation, the protestants have no valid objections based on increased loss from evaporation or seepage arising from the petitioners' abandonment of the ditch. The Court further said:
"The loss of water by seepage or evaporation, after diversion from the stream to a ditch, is not an injury to, or loss of, a water right as between the ditch cotenants. Each of several water appropriators using a ditch in common may separately abandon his right thereto, and injury to one by virtue of the other's abandonment of all or part of the ditch by change of point of diversion or of place of use is not an actionable injury."
Thus we perceive no merit in this objection. As indicated above, the issue of title to the water which the petitioner proposes to change is a proper subject for consideration. This is, however, a double-edged sword which applies equally to the users under the Lee Ditch and if they fail to prove a right to use the water there exists no basis whatsoever for their objections to the inevitable drying up of some land under that ditch for which there would no longer be irrigation water available.
The question of the right of the Lee, Stewart and Eskins protestants has not yet been litigated and certainly this is a highly pertinent issue which should be determined in a subsequent hearing. See Hallet v. Carpenter, 37 Colo. 30, 86 P. 317. If these protestants succeed in proving invasion *422 of a vested right, it is still possible that a compensating condition acceptable to petitioners could be entered.
B. A different problem is presented in connection with the other parties who take water from Clear Creek. It was conceded throughout the course of the litigation that there would be an injurious effect as a result of the change of point of diversion of 2.86 c. f. s. Consequently the issue is that of sufficiency of the terms and conditions imposed to prevent injury. Undoubtedly the petitioners had the burden of satisfying the trial court that the conditions could be imposed which would adequately protect vested rights on Clear Creek, Hallenbeck v. Granby Ditch & Reservoir Co., 144 Colo. ___, 357 P.2d 358; City and County of Denver v. Colorado Land & Livestock Co., 86 Colo. 191, 279 P. 46. This does not mean, however, that the petitioners must propose conditions governing the change in point of diversion in the first instance, or, in the alternative, suffer the peril of a dismissal. In Colorado Springs, City of, v. Yust, 126 Colo. 289, 249 P.2d 151, 155, the Court speaking to this issue used the following pertinent language in setting forth the extent of the petitioners' burden:
"Protestants, in turn, insist that petitioner's evidence did not establish that no injury would result to the vested rights of others; that no competent evidence was introduced to establish the allegation of the petition, and that denial of change by the court was therefor necessary. The burden of proof on petitioner in such a proceeding requires him to meet only the grounds of injury to protestants asserted by them. As said by the Utah court, in Tanner v. Humphreys, supra [87 Utah 164, 48 P.2d 484]:
"` In an application for a change of diversion, it is not necessary for a party so applying each time to make a showing that it has beneficially used its water right. If it has not, then the protestants may so show. It is assumed that where the water has been used upon the land for which it is diverted, that such amount was beneficially used.
* * * * * *
"`It would be impracticable to require the plaintiff to ferret out all of the ways in which the others might perchance be injured and offer proof in negation thereof as a part of its affirmative case. The general negative as against the injury to the protestants is sufficient to carry the case over a motion for a nonsuit in that respect.'"
In the same case, the Court held that dismissal is not justified unless the trial court is convinced of the impossibility of imposing terms and conditions.
"The only injury alleged or asserted by protestants is that claimed to result from enlarged use in time and volume by petitioner. The amount of such enlarged use, and the resultant injury, if any, to protestants, would appear to be approximately ascertainable. Petitioner here introduced evidence as to the extent of additional water intercepted by means of the proposed change and resultant injury, which protestants permitted to go unchallenged. Under such circumstances, change of point of diversion should be decreed subject to condition which would compensate protestants for such injury. Dismissal of petitioner's action would result either in his being deprived of a valuable property right or in the necessity of his bringing another action involving the same parties and the same evidence to determine the same issue which was before the court in this proceeding. * * *
"We think in such a proceeding, upon showing of substantial injury, the court should either make findings on a supporting record that the injurious effect of the change sought cannot be prevented by the imposition of terms and conditions, or should decree the change upon compensating terms and conditions."
To the same effect is Farmers Highline Canal & Reservoir Co. v. City of Golden, *423 129 Colo. 575, 272 P.2d 629, 635, where it was said:
"Where it appears that the change sought to be made will result in depletion to the source of supply and result in injury to junior appropriators therefrom, the decree should contain such conditions as are proper to counteract the loss, and should be denied only in such instances as where it is impossible to impose reasonable conditions to effectuate this purpose."
See also Bates v. Hall, supra; Vogel v. Minnesota Canal & Reservoir Co., 47 Colo. 534, 107 P. 1108, and Cline v. McDowell, 132 Colo. 37, 284 P.2d 1056.
Our interpretation of these authorities is that they require the court to make inquiry as to whether terms and conditions are feasible and that it be satisfied as to impossibility of imposing conditions before it is justified in entering an order of dismissal of a petition. The statutes in point of diversion proceedings have been described as sui generis, Farmers' High Line & Reservoir Co. v. Wolf, 23 Colo.App. 570, 131 P. 291.
We find nothing in the record or briefs requiring a conclusion that the witness Wheeler was basically wrong in evaluating the contended consumptive uses. It is possible that the trial court is not impressed with the accuracy of his figures. However, this would not justify the dismissal because it is not the same as holding that proper conditions could not be imposed which would adequately compensate the loss. Since his evaluations are not patently incorrect, it follows that the petitioners made a sufficient showing to justify a full and complete inquiry.
The trial court, in this type of proceeding, is required to do more than passively hear the evidence; it has an active role in the administration of valuable and vital rights and, as we read the statute, it requires the court to reconcile where possible mutually conditioned vested rights. Where the evidence presented by petitioners at least creates a doubt concerning (a) the existence of injury and (b) whether compensatory conditions can be imposed once the evidence is fully developed, we hold that it is error for the trial court to simply dismiss the petition at the close of the petitioners' case. Means v. Pratt, 138 Colo. 214, 331 P.2d 805.
The judgment is reversed and the cause is remanded with directions to the trial court to determine upon the evidence already taken, together with such additional evidence the parties may offer whether a change in point of diversion as prayed for can be granted upon the imposition of compensatory conditions, and for such further hearing as may be appropriate for a determination of the issues consistent with the views expressed herein.