No. 20788.

THE BOULDER AND WHITE ROCK DITCH AND RESERVOIR COMPANY, ET AL. *v.* THE CITY OF BOULDER, ET AL.
(402 P.2d 71)

Decided May 10, 1965.    Rehearing denied May 24, 1965.

Secor, McCarty, Flanders & Wood, Fischer, Fischer & Beatty, for plaintiffs in error.

Neil C. King, City Attorney, Marvin B. Woolf, Assistant, Raphael J. Moses, Special Counsel, for defendants in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

The City of Boulder, plaintiff in the district court, and

hereinafter referred to as the City, sought and was granted, subject to certain conditions, a decree permitting it to change the point of diversion of water represented by $24^{131/240}$ shares of The New Anderson Ditch Company, owner of the Anderson Ditch (equal to 6.14 cubic feet of water per second of time), and, $5^{61}/_{64}$ shares of The Farmers Ditch Company, owner of the Farmers Ditch (equal to 4.36 cubic feet of water per second of time).

The Anderson Ditch has Priority No. 4 dated October 1, 1860, and the Farmers Ditch has Priority No. 14, dated October 1, 1862. Both ditches are located in Water District No. 6, Irrigation Division No. 1, in the State of Colorado. The City alleged former use of this water for irrigation purposes.

The original diversion point is located near the mouth of Boulder Canyon with the ditches running in and through the City. The desired change is to a point upstream, a distance of about fourteen miles, where the City would divert the water into its pipeline to transport it to its environs for domestic use. In 1925, and again in 1942, the City was successful in two other change of point of diversion actions involving the same ditches. Neither of those decrees was questioned in review proceedings. This action, the City's third, has, however, raised protests from a considerable number of other ditch owners who are hereafter referred to as the protestants.

The record discloses that several of the protestants divert water at or near a common point of diversion at a situs on Boulder Creek not far below the headgates of the Anderson and Farmers Ditches — and above the sewage return outlet of the City. The other protestants have their headgates further downstream and below the sewage return flow of the city.

In brief, the City maintains that all of the waters requested to be transferred can be transferred without injury resulting to junior appropriators under the re-

strictions and conditions provided in the decree. Conversely, protestants urge that no transfer should take place because of a failure of the City's case; but in any event, it should be permitted only if it be made subject to additional limitations which they propose. They assert that in the event the transfer is not so further restricted, there will be substantial injury to the junior appropriators.

The trial court allowed the change of point of diversion. The protestants, by writ of error, now urge the following grounds for reversal, to-wit:

(1) The City failed to prove non-injury to junior appropriators; and conversely protestants proved there would be injury to at least some junior appropriators;

(2) The return flow, upon which the trial court relied to resolve certain problems of potential injury, will not cure the stream depletion which allegedly will result from the diversion;

(3) The "built-in restrictions," as to conditions of former use upon which the City relies to prevent injury, will not be effective;

(4) That part of the water in the Anderson Ditch had been wasted in the past and that the trial court erroneously found that all water under the Anderson Ditch had, historically, been beneficially used; and,

(5) The trial court's decree will result in increased use of water to protestants' detriment.

The City assigns cross-error on two issues, viz:

(1) That the two previous adjudication decrees on these same ditches, in 1925 and 1942, permitting the transfer of water to the same new point from the same old point of diversion, renders the issue as to transferability res judicata in this proceeding and the trial court should have so held; and,

(2) That the trial court erred in refusing to assess the City's costs to protestants.

■■ At the outset, we note that most of the grounds urged for reversal, reveal that protestants simply dis-

pute the trial court's findings of fact. We are directed to a five volume record of 2924 folios (of which four volumes consist of lengthy and complicated testimony) that only the trier of fact had the privilege of hearing and weighing; additionally, we are asked to direct our attention toward water facilities that were personally inspected and studied by the trier of facts. No citation of authority is needed to demonstrate that we do not overturn findings in the absence of a proper showing that the trial court completely disregarded the evidence before it. Suffice it to say, no such showing is made here and our review of the lengthy, complicated record discloses ample evidence to support the trial court's determination on the pertinent controverted factual issues involved. And this is true, even though under our statutes and case law the City had the burden of satisfying the trial court that the conditions imposed would adequately protect other vested rights in Boulder Creek. E.g., C.R.S. 1963, 148-9-22 et seq.; *Mannon v. Farmers High Line Canal & Reservoir Co.*, 145 Colo. 379, 360 P.2d 417 (1961).

■ No good purpose would be served by reciting here the pertinent portions of the trial court's twenty-two page FINDINGS OF FACT AND CONCLUSIONS OF LAW. Suffice it to say, that such demonstrate not only the conflict in the evidence but also the infinite care exercised by the court in weighing the facts presented and in properly applying the law applicable to the issues involved. The gist of the evidence and findings is that the City annexed certain lands formerly irrigated with the water in question; that if allowed to change the point of diversion and use from agricultural to domestic, under the facts of this case, there would be not only no harm to those protestants above the sewer plant outlet, but there would be an increased flow to protestants' below the sewer outlet to their betterment.

The trial court carefully analyzed the stock owner-

ship in both the Anderson and Farmers Ditches; uses of water within the City; the dispute as to the acres formerly irrigated; water used and the claim of waste, seepage and abandonment; return flow; and types and conditions of soils and the testimony of the witnesses. Its findings concluded that the City was entitled to the change of point of diversion subject to the restrictions imposed by the court. In its decree the court provided in pertinent part that:

(1) As to the Anderson Ditch it could transfer 5.83 c/f/s of water with .31 c/f/s water to remain in the ditch to compensate other Anderson stockholders for increased losses from evaporation and seepage;

(2) As to the Farmers Ditch, it could transfer 4.14 c/f/s of water leaving .22 c/f/s of water for compensation as in the Anderson; and,

(3) As to Petitioner's right to take water at its pipeline intake, that "* * * under either priority [it] shall be limited in such amounts and at such times as Petitioner has the right to demand such water as a shareholder of stock in * * * [the two ditches], subject only to any such limitations and conditions as the respective decrees themselves may contain."; and,

(4) Petitioner should have its costs, but this was later amended to require each party to bear its own costs.

As noted earlier, an examination of the record in this case shows conflicts in the evidence as to many matters in issue, and as to those we are compelled to affirm. As to those matters not in conflict, we conclude that they support — rather than weaken — the decree. And, from what has already been stated, we find no need and, in fact, no justification for any additional conditions as urged by protestants. The City has a right to change its point of diversion if it can do so without injury to others or if reasonable conditions can be attached to prevent such an effect. *Farmers Highline and Reservoir Co., et al. v. City of Golden, et al.*, 129 Colo. 575, 272 P.2d 629 (1954). Instead of an increased use

here, the record discloses there would, in fact, be a decreased use.

We turn next to the cross-errors.

■■ We do not agree with the City that the trial court erred in overruling its claim of res judicata as to the issues involved. We agree with protestants when they assert that they know of no statute that requires, and no case law that holds, that a prior change of point of diversion decree is binding on future attempted changes of additional water from the same source. The first and most obvious reason seems to be that the subject matter, though similar, is not the same, and it is hard to conceive of such a case where conditions, uses and even users would be exactly the same. In addition, junior appropriators well might be differently affected by a later decreed change than by one entered much earlier. We conclude that each change of a point of diversion must necessarily rest upon circumstances as they are found to exist at the time the change is requested — thus res judicata cannot play a part in such proceedings. E.g., *Ft. Collins Milling & Elevator Co., et al. v. Larimer & Weld Irrigation Co.*, 61 Colo. 45, 56, 156 Pac. 140 (1916); and *New Cache La Poudre Irrigation Co. v. Water Supply and Storage Co.*, 49 Colo. 1, 111 Pac. 610 (1910).

■ As to the City's costs which it claims protestants should pay in the amount of $3,480.52, we also find no error.

■ No change of point of diversion under the statute can be allowed without the petitioner giving the requisite notice to necessary persons. In addition, a petitioner must procure and put into evidence data which by its very nature is expensive to obtain. All of these expenses would be incurred regardless of whether any protestants appeared. On the other hand, protestants have a right to appear and be heard and to put a petitioner upon his proof that a change should be permitted. *Farmers, supra.*

204

In the absence of a statute or rule (and here there is none) the assessment of costs lies within the sound discretion of the trial court. A review of this case discloses no abuse of that discretion.

The judgment is affirmed.