No. 21405.
No. 21667.

CITY OF WESTMINSTER *v.* MARCUS F. CHURCH; MARCUS F.
CHURCH, TRUSTEE; THE MANDALAY IRRIGATION COMPANY,
A MUTUAL DITCH COMPANY; AND THE CITY OF BROOMFIELD,
A MUNICIPAL CORPORATION.
(445 P.2d 52)

Decided September 16, 1968

1

4

John B. Barnard, Jr., for plaintiff in error.

Fairfield and Woods, Charles J. Beise, Charles E. Matheson, for defendants in error Marcus F. Church and Marcus F. Church, Trustee.

Raphael J. Moses, George Vranesh, for defendants in error The City of Broomfield and The Mandalay Irrigation Company.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Two writs of error have been consolidated in this court for decision. Both actions involve water rights of the respective parties.

The action was commenced by Marcus Church, The Mandalay Irrigation Company and the City of Broomfield, as plaintiffs, in the Boulder district court against the City of Westminster. Plaintiff in error will hereinafter be referred to as Westminster or defendant, and we will refer to the other parties by name or as plaintiffs.

Plaintiffs sought declaratory judgment and prayed for a decree:

(a) Declaring an abandonment of certain water rights in Coal Creek owned by the defendant Westminster;

(b) Limiting the use of Westminster's rights to historical consumption; and

(c) Restraining Westminster from interfering with plaintiffs' rights as junior appropriators of the Coal Creek waters.

At the commencement of the action, plaintiff City of Broomfield moved for a preliminary injunction restraining Westminster from diverting more than a fixed quantity of water pending entry of final judgment. To the district court order granting the preliminary injunction, Westminster brought writ of error (No. 21405) to his court.

On the main issues, plaintiffs subsequently moved with supporting affidavits and depositions for summary judgment under R.C.P. Colo. 56. The trial court granted a partial summary judgment declaring that defendant's proposed use of its water rights would result in an increased burden on the stream to the plaintiffs' injury, and barring Westminster from using its water rights in any manner other than had been historically used.

The district court reserved for trial the factual issue of the extent of historical use, and upon conclusion of that phase entered a final decree defining the defendant's rights. Defendant sued out writ of error (No. 21667) directed to that decree. We have consolidated the two writs in this proceeding.

Water rights involved herein were purchased by Westminster from Frank Rodgers and Carrie Rodgers in 1963. Under the terms of the conveyance Westminster acquired legal title to direct flow and storage water rights described as follows:

*Direct Flow Water Rights*

(a) From the headgates of the Last Chance Ditch

(i) A seven-tenths interest in the Last Chance Ditch and the water right decreed thereto, being Priority No. 6 from Coal Creek in the amount of 10.78 c.f.s., with priority date of May 1, 1870;

(ii) Eighteen c.f.s. originally decreed to the McKenzie Ditch Priority No. 4 with date of June 1, 1866;

(iii) Fifty inches, or 1.302 c.f.s., originally decreed to the Eggleston Ditch No. 2, Priority No. 3, with date of May 1, 1862;

(b) From the headgate of the Autrey and Eggleston Ditch

(i) Priority No. 1 with date of June 1, 1860, originally decreed as 4.16 c.f.s., but entitled to only 1.22 c.f.s. under the 1958 decree in Civil Action 14000;

*Storage Water Rights*

(a) Last Chance Reservoir No. 1, Priority No. 3, dated April 1, 1872, for 45.5 acre-feet;

(b) Last Chance Reservoir No. 1, first enlargement, Priority No. 7, dated September 15, 1885, for 24.1 acre-feet;

(c) Last Chance Reservoir No. 2, Priority No. 4, dated April 1, 1876, for 68.2 acre-feet;

(d) Last Chance Reservoir No. 2, first enlargement, Priority No. 6, dated September 15, 1884, for 43.3 acre-feet.

The record discloses that Rodgers and their predecessors in interest had used these water rights for agricultural purposes; and further, they at no time had diverted water to the full extent of their decreed priorities.

In 1958 the Rodgers had purchased the aforementioned direct flow rights in the Eggleston No. 2 Ditch and the McKenzie Ditch from John Jenkins. By the terms of that conveyance, the Rodgers acquired Jenkins' decreed rights for 4.65 c.f.s. from the Eggleston No. 2 Ditch, and for 18.0 c.f.s. from the McKenzie Ditch. The Rodgers then filed a petition in the Boulder County district court to change the point of diversion of these rights, together with the Autrey and Eggleston Ditch rights, from the headgates of the three ditches to the headgate of the Last Chance Ditch.

Although a number of junior appropriators entered appearances in this diversion proceeding, entitled Civil Action 14000, to oppose the Rodgers' petition, the plaintiffs did not. Nevertheless as interested parties and owners of water rights in Coal Creek, they were duly served with notice of the proceeding. Under the provisions of C.R.S. 1963, 148-9-23, they were parties to that proceeding for change of point of diversion and are bound by the decree. *Farmers Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 272 P.2d 629. This decree on stipulation of facts and conditions between the Rodgers and the appearing protestants makes the following adjudication:

"* * *

"(1) That all of the water right previously decreed by this Court to the Autrey and Eggleston Ditch * * * for 4.16 cubic feet of water per second * * * with the exception of 1.22 cubic feet of water per second, is hereby declared to be abandoned to the stream.

"(2) That the petition to transfer the point of diversion for the remaining 1.22 cubic feet of water per second * * * is hereby denied.

"(3) That fifty (50) inches of the water right previously decreed by this Court to the Eggleston Ditch No. 2 * * * is found not to have been abandoned, and the petition filed herein to change the point of diversion * * * is hereby granted.

"(4) That none of the water rights previously decreed by this Court to the McKenzie Ditch * * * for eighteen (18) cubic feet of water per second * * * has heretofore been abandoned, and the petition filed herein to transfer the point of diversion for all of said water right * * * is hereby granted."

I.

██ Westminster first contends that the 1958 decree is a complete bar to plaintiffs' suit and that the court erred in refusing to dismiss the action upon the grounds of *res judicata*. We do not agree. *Res judicata* constitutes an absolute bar only when there is in both the prior and subsequent suits identity of subject matter, identity of the cause of action, identity of parties to the action, and identity of capacity in the persons for which or against whom the claim is made. *Hizel v. Howard,* 144 Colo. 15, 354 P.2d 611; *McDermott v. Bent County Irrigation District,* 135 Colo. 70, 308 P.2d 603; *Newby v. Bock,* 120 Colo. 454, 210 P.2d 985.

██ In the case at bar the action sought to enjoin Westminster's alleged extended use of its decreed water right — clearly a different cause of action and different subject matter not presented in a proceeding to change a point of diversion. The subject matter of the instant action also seeks to adjudicate water storage rights in the Last Chance Reservoirs, as well as the direct flow rights in the Last Chance Ditch, and these rights were in no way adjudicated in the 1958 action. Further, plaintiffs' cause of action concerns anticipated damage arising from defendant's change in method and purpose of use from the pre-existing intermittent flow for irrigation purposes to a continuous flow for storage for a municipal water supply. The 1958 proceeding was limited

to damages to those to be affected by any change in point of diversion. Where an owner of decreed rights, after obtaining a decree permitting a change in point of diversion, enlarges or attempts to enlarge the use of his water rights to the injury of other appropriators, the permissive decree does not bar relief to the latter. *Dry Creek No. 2 Ditch Co. v. Coal Ridge Ditch Co.,* 109 Colo. 556, 129 P.2d 292; *New Cache La Poudre Irrigating Co. v. Water Supply & Storage Co.,* 74 Colo. 1, 218 P. 739.

In *Pomponio v. Larsen,* 80 Colo. 318, 321, 251 P. 534, 536, this court stated that:

"The best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, according to the authorities, is whether the same evidence would sustain both, and if it would, the two actions are the same, and this is true although the two actions are different in form. * * *."

See *Newby v. Bock, supra; Sloniger v. Rains,* 120 Colo. 339, 208 P.2d 941.

The decree in Civil Action 14000, by this test, does not bar prosecution of the instant action. Plaintiffs' evidence submitted in the action now before us established historical non-use by the Rodgers and a prospective enlarged use by the City of Westminster. In the 1958 diversion proceeding the decree does make certain findings relating to abandonment, but this is not the same subject as non-use of full decreed rights nor did the evidence at that time refer to Westminster's enlarged use — matters then only speculative as to what Westminster would do and irrelevant to the question of change of point of diversion.

We conclude, therefore, that the decree in Civil Action 14000 did not immunize the City of Westminster against subsequent equitable actions by junior appropriators designed to maintain the historic level of use by the City of its decreed rights.

10

## II.

■ Defendant contends that if the suit is not completely barred, the issue of historical non-use of the direct flow water rights by Jenkins was adjudicated in the 1958 diversion proceeding, and that the district court in the instant action was bound by the decree therein. Concededly, the question of Jenkins' abandonment of the decreed rights in the McKenzie, Eggleston No. 2 and the Autrey and Eggleston Ditches was controverted, examined and passed upon by the court in Civil Action 14000, and this issue could not have been relitigated in the instant case. See *Green v. Chaffee Ditch Co.*, 150 Colo. 91, 371 P.2d 775; *San Luis Valley Irrigating District v. Centennial Irrigating Ditch Co.*, 84 Colo. 502, 272, P. 9; *Bijou Irrigation District v. Weldon Valley Ditch Co.*, 67 Colo. 336, 184 P. 382. Defendant argues that the district court in effect relitigated the issue of Jenkins' abandonment of the McKenzie and Eggleston No. 2 water rights by inquiring into Jenkins' historical use of these rights. The findings in Civil Action 14000 that Jenkins had not abandoned the decreed right for 18 c.f.s. from the McKenzie Ditch, and had not abandoned 1.302 c.f.s. from the Eggleston No. 2 Ditch, however, is not an adjudication that Jenkins in fact used these water rights to the same extent. The determination simply means that, as of 1958, there was no voluntary relinquishment, coupled with an intention to relinquish, of these rights. See *Commonwealth Irrigation Co. v. Rio Grande Canal Water Users Association*, 96 Colo. 478, 45 P.2d 622; Hutchins, Law of Water Rights in the West 389. It was proper, therefore, for the district court to examine the state engineer's records introduced into evidence to determine the historical use of the Eggleston No. 2 and McKenzie Ditch water rights during the period 1938-59. The purpose and effect of this inquiry was not to readjudicate the issue of Jenkins' abandonment, but simply to ascertain the extent of actual historical usage by Jenkins and the Rodgers.

■ Perhaps defendant's allegations of error — because of the trial court's examination into the state engineer's records — stems from the fact that the term "historical use" is not very prevalent in the prior decisions of this court and the belief that we had not heretofore sanctioned any such yardstick. We find, however, that this method of handling the matter, *i.e.*, using the 10 year moving average, was used in the Colorado River Compact, C.R.S. 1963, 149-2-1, (75 million acre feet to be delivered at Lee Ferry each 10 year period.) which has the United States Supreme Court approval. *Arizona v. California*, 373 U.S. 546, 10 L. Ed.2d 542, 83 S.Ct. 1468. The method also was used in the Fryingpan-Arkansas diversion. Precedent for the trial court's limitation of the direct flow rights finds sanction in the apropos language of this court to be found in *Enlarged Southside Irrigation Ditch Company v. John's Flood Ditch Company*, 116 Colo. 580, 183 P.2d 552, as follows:

" * * * The owner of a priority for irrigation has no right, as against a junior appropriator, to waste it; neither has he the right to increase the amount or extend the time of his diversion to enable him to put it to double use by irrigation of other lands in addition to those for which it was appropriated * * *; nor to lend, rent or sell to others the excess water after irrigation of the land for which it was appropriated, to the detriment of junior appropriators, and such limitation of right of use cannot be circumvented by shifting the use to other lands. The well-recognized right to change either the point of diversion of the water right or its place of use is always subject to the limitation that such change shall not injure the rights of subsequent appropriators."

■ In a much later precedent in *Green v. Chaffee Ditch Company, supra,* this court reaffirmed the language in *Farmers Highline Canal & Reservoir Company v. City of Golden, supra,* as follows:

" 'Equally well established, as we have repeatedly held,

is the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations, and that subsequent to such appropriations they may successfully resist all proposed changes in point of diversion and use of water from that source which in any way materially injures or adversely affects their rights. * * *' "

## III.

Westminster assigns as error the action of the court enjoining it from using portions of the water rights it had purchased from the Rodgers.

The trial court summary judgment provides that Westminster and its agents "hereby are enjoined and restrained from claiming or using * * * Storage Rights:

"A. Last Chance Reservoir No. 1, Priority No. 3, dated April 1, 1872, for 45.5 acre-feet.

"B. Last Chance Reservoir No. 1, first enlargement, Priority No. 7, dated September 15, 1885, for 24.1 acre-feet.

"C. Last Chance Reservoir No. 2, Priority No. 4, dated April 1, 1876, for 68.2 acre-feet.

"D. Last Chance Reservoir No. 2, first enlargement, Priority No. 6, dated September 15, 1884, for 43.3 acre-feet.

in any manner other than which said rights have been historically used, and said Defendant is further enjoined and restrained against placing a greater burden on the stream by virtue of such diversions than has historically occurred."

In the Findings, Conclusions, Judgment and Decree ratifying the earlier summary judgment, the court decreed:

"The defendant, the City of Westminster, its officers, agents, employees, successors and assigns, be and they are hereby enjoined and restrained from diverting more than 0.28 c.f.s. per second of time under its ownership of a portion of the Eggleston No. 2 decree; from divert-

ing more than 3.2 c.f.s. per second of time under its ownership of the McKenzie decree; and from diverting more than 4.00 c.f.s. per second of time under its ownership of a portion of the Last Chance ditch decree; provided, further, that not more than 3060 acre-feet of water shall be diverted under said decrees during any moving ten year period, nor shall more than 648 acre-feet of water be diverted under said decrees during any one irrigation year, said diversions to be restricted to the irrigation season, being the interim when other irrigators demand water for direct flow.

"Said defendant, the City of Westminster, its officers, agents, employees, successors and assigns, be and they are hereby enjoined and restrained from diverting more than 1230 acre-feet of water under its Last Chance Reservoir decrees during any moving ten year period, nor shall more than 182 acre-feet of water be diverted under said decrees during any one irrigation year."

These restrictions, based upon the maximum historical diversions in any one year between 1938 and 1959, were imposed to prevent defendant from exceeding historical usage to the injury of junior appropriators.

Plaintiffs' action against the City of Westminster is but one of several cases in this jurisdiction involving a municipality's purchase of agricultural water rights with the intention of devoting such rights to municipal and domestic purposes. The municipality, of course, has the legal right to devote its acquired water rights to municipal uses, provided that no injury accrues to the vested rights of other appropriators. *Farmers Highline Canal & Reservoir Co. v. City of Golden, supra; Strickler v. City of Colorado Springs,* 16 Colo. 61, 26 P. 313; Hutchins, Law of Water Rights in the West 384 (1942). The principal dangers attending the municipality's altered use are that the city will attempt to use a continuous flow, where the city's grantor only used the water for intermittent irrigation; *Baker v. City of Pueblo,* 87 Colo. 489, 289 P. 603; and

14

that the municipality will enlarge its use of the water to the full extent of the decreed rights, regardless of historical usage. *Green v. Chaffee Ditch Co., supra; Farmers Highline Canal & Reservoir Co. v. City of Golden, supra; Farmers Reservoir & Irrigation Co. v. Town of Lafayette,* 93 Colo. 173, 24 P.2d 756. To protect against the possibility of such extended use of the water rights, the courts will impose conditions upon the change of use and point of diversion sufficient to protect the rights of other appropriators. We have reviewed and upheld such restrictive conditions in numerous cases. *See, e.g., Boulder & White Rock Ditch & Reservoir Co. v. City of Boulder,* 157 Colo. 197, 402 P.2d 71; *City of Colorado Springs v. Yust,* 126 Colo. 289, 249 P.2d 151; *Brighton Ditch Co. v. City of Englewood,* 124 Colo. 366, 237 P.2d 116; *Farmers Reservoir & Irrigation Co. v. Town of Lafayette, supra.*

 Defendant takes the position that it is entitled to enjoy the decreed rights purchased from the Rodgers and their predecessors in interest. Westminster is partially correct, and their contention is well founded as to the storage rights. We hold that the trial court erred in ruling that the storage rights were limited to historical use. A reservoir right permits one filling of the reservoir per year. Change of use does not create a greater burden as to storage water. We believe the City of Westminster is entitled under its storage right decree to whatever water is available each year to fill that storage decree. As to the direct flow rights, the trial judge was correct. We so held in *Farmers Highline Canal & Reservoir Co. v. Golden, supra,* a statutory proceeding to change the point of diversion. In that case, the City of Golden had purchased certain decreed rights formerly used for irrigation and sought to use those rights for municipal purposes at a new point of diversion. The trial court granted a change in point of diversion to the full extent of the decreed rights, notwithstanding the fact that Golden's predecessor could

not have used this amount for irrigation without substantial wastage. We held that the trial court erred in permitting the change to the full extent of the decreed rights, stating in pertinent part:

"Petitioner contends, however, that it is entirely within the right of an appropriator of water to enlarge upon his use, and now that the City of Golden is the owner, it may enlarge upon the use to the extent of the entire decree. Counsel for petitioner here confuse two altogether different principles. This doctrine even on behalf of an original appropriator, may be applied only to the extent of use contemplated at the time of appropriation. It has no application whatever to a situation where a decree is sought for change of point of diversion or use. There the right is strictly limited to the extent of former actual usage. 'The right to change the point of diversion is, of course, nonetheless a qualified right because petitioner acquired it by purchase.' *Fort Lyon Co. v. Rocky Ford Co.*, 79 Colo. 511, 515, 246 Pac. 781."

Defendant City of Westminster could not enlarge upon its predecessors' use of the water rights by changing periodic direct flow for irrigation to a continuous flow for storage. Such a change would necessarily increase the ultimate consumption from the stream to the detriment of other appropriators.

IV.

Defendant City of Westminster next contends that the district court improperly granted plaintiffs' motion for summary judgment. R.C.P. Colo. 56 authorizes summary judgment where there is no genuine issue as to any material fact. Under subsection (d) of that Rule, the court may grant a partial summary judgment as to material facts existing without substantial controversy and reserve disputed facts for subsequent proceedings. The district court in the instant case correctly determined that defendant's proposed use of the water rights acquired from the Rodgers, in excess of the historical use of such rights, would result in injury to

the plaintiffs as junior appropriators. Contrary to the defendant's contentions, this determination is uncontradicted by the voluminous depositions, affidavits and exhibits submitted on the motion for summary judgment. The one factual issue actually controverted — that is, the extent of historical usage — was properly resolved after the ensuing trial in the district court.

The district court ascertained the extent of historical usage of defendant's water rights during the period 1938 to 1959 on the basis of the state engineer's certified records. This data established that in this twenty-year period, average annual diversions were 306 acre-feet under the direct flow decrees and 123 acre-feet under the storage decrees. To eliminate fluctuations in availability from year to year, the court devised a ten-year moving average of 3060 acre-feet and 1230 acre-feet for the defendant's direct flow and storage rights respectively. Defendant maintained adequate storage facilities for these diversions, so that the direct flow rights could be transformed into storage rights, with no greater quantity being diverted in any ten-year period for storage purposes than had been historically diverted for direct flow irrigation. Except as to the storage rights previously discussed, in light of the circumstances of the case, this method of ascertaining due restraints on defendant's altered use of the water rights is eminently reasonable.

We also note that at the times free water is available in the river, the restrictions would not apply since all appropriators may then divert beyond the measure of their decree without infringing the rights of other persons.

V.

Finally, defendant contends that the district court erroneously granted the motion for preliminary injunction against excessive diversions by defendant pending the rendition of final judgment. It is urged that the moving party, plaintiff City of Broomfield, failed to

establish that irreparable injury would result from failure to grant the preliminary injunction. In view of our final disposition of this litigation, this issue is moot.

The judgment is affirmed as to that portion of the decree on the direct flow rights, but reversed as to the restrictions imposed on the storage rights, and remanded with directions to amend the decree in consonance with this opinion.