MR. JUSTICE GROVES
delivered the opinion of the Court.
The district court denied the petition of the appellant, Highland Irrigation Company (here called “Highland”), to enter an appearance in order to request the modification or vacation of a decree changing the place of storage of water. This appeal concerns the correctness of that denial.
The water involved is that of the Model Reservoir of The Model Land and Irrigation Company. This reservoir was adjudicated in 1925 to have an annual storage right of 20,000 acre feet of water with date of appropriation of January 22, 1908. It is on the Purgatoire River a few miles downstream from the City of Trinidad.
The Purgatoire River has its headwaters in Las Animas County, Colorado, near the New Mexico border. The river flows in a northeasterly direction through Las Animas, Otero and Bent Counties, entering the Arkansas River a little over 100 miles (as the crow flies) from its headwaters. The confluence of the Purgatoire River with the Arkansas River is a short distance west of the west part of John Martin Reservoir. Highland is the appropriator of water from the Purgatoire River in Bent County not too many miles upstream from the river’s confluence with the Arkansas River, and far downstream from Trinidad.
In 1904, 1942 and 1955 there were disastrous floods of the Purgatoire River causing very heavy damage to property in Trinidad. For many years, and even prior to the 1942 flood, there was considerable discussion concerning a flood control project which might protect Trinidad and other areas from future flood damage. Considerable research and planning were *512 conducted by the Colorado Water Conservancy District, the United States Corps of Army Engineers and the United States Bureau of Reclamation. These studies resulted in the plan of the so-called Trinidad Project. This embraced the Trinidad Reservoir, to be created by a dam whose axis would be 7591 feet in length, such dam and reservoir to be upstream from Trinidad.
In 1958, as a part of the Omnibus Rivers and Harbors Bill, the Trinidad Project was authorized by the Congress of the United States. This authorization provided, as a condition thereof, the transfer of the 20,000 acre-feet storage right of the Model Reservoir to the Trinidad Reservoir.
The “horse in front of the cart” in this situation was that there must be a decree obtained in advance of construction of the Trinidad Project authorizing such transfer of storage water. The statutes then applicable to transfer proceedings of this kind were to be found in the Adjudication Act of 1943, C.R.S. 1963, 148-9-22 et seq., which statutory provisions were in effect from 1943 until the adoption of the Water Right Determination and Administration Act of 1969. Tit. 37, Art. 92, C.R.S. 1973.
The Adjudication Act of 1943 provided with respect to transfer proceedings that the petition initiating the same should contain, among other things, the following: the location of the storage water as decreed, with the date and amount of priorities thereof; the new location; and a “list of all ditches and other structures taking water from the same source, and all reservoirs and other structures located on the same source, between . . . the decreed and the new places of storage, with the names and addresses of the owners or claimants thereof. . . .” The statute required notice to be given in the proceedings to intervening owners and claimants taking water from the stream between the old location and the new location, and that notice be published for four successive weeks in a newspaper in each county into which the particular water district extended.
Accordingly, on January 17, 1962 The Model Land and Irrigation Company and The Purgatoire River Water Conservancy District filed in the District Court of Las Animas County their petition for change of place of storage of the Model Reservoir water, which petition complied with the provisions of the statute above mentioned. Notice was then given and published as provided by that statute.
A number of protestants appeared and indicated their objections or concerns. The petitioners and the protestants negotiated their differences and concerns for a period of over three years. The protestants were The Fort Lyon Canal Company, The Colorado Fuel & Iron Corporation, The Amity Mutual Irrigation Company, the Catlin Canal Company, The Highline Canal Company, The Arkansas Ditch Association and the Southeastern Colorado Water Conservancy District. The petitioners and the protestants reached mutually agreeable stipulations and a hearing was set in the proceedings for, and was held on, April 15, 1965. By decree *513 entered on that day it was ordered that the place of storage of the 20,000 acre-feet of water adjudicated to the Model Reservoir might be changed to the Trinidad Reservoir.
In the decree the court recited that the United States Congress had required as a condition precedent to the construction of the Trinidad Project that there be the transfer to the Trinidad Reservoir of the Model Reservoir storage right. The decree contained this provision:
“Because the entry of this decree is required prior to initiation of the construction of the Trinidad Dam and Reservoir Project, it may be several years after the entry of this Decree before water can physically be stored in the Trinidad Reservoir under the transferred Model Reservoir Right, therefore this Decree shall not become operative until after this Court shall have found that said dam shall have been finally constructed and ready for operation pursuant to motion by the Petitioners duly served on Protestants and hearing had thereon. Prior to such finding, the Model Reservoir Right may be exercised as if this Decree had not been entered.”
The decree further provided:
“[T]he Petitioners’ storage of water in the Trinidad Reservoir Under the Model Reservoir Right shall be regulated in such a manner that the quantity of water occurring in the Las Animas or Purgatoire River at a gauging station on said River below Von Bremmer Arroya shall remain and be the same, as determined by the State Engineer, •.during any period of ten consecutive years reckoned in continuing progressive series beginning with January 1, 1954 as it would have been had the Model Reservoir Right not been transferred to the Trinidad Reservoir.”
* * * *
“IT IS FURTHER ORDERED, that this Court retain continuing jurisdiction over the subject matter of this proceeding so that, upon motion of any party hereto, this Court, shall, upon thirty days notice to all other parties hereto, hold a hearing thereon, including the taking of testimony, and may make such modifications to this decree as may appear necessary to protect the Protestants and their beneficiaries against any actual and material injury which may have been caused by the exercise of the Model Storage Right at the Trinidad Reservoir as a part of the Trinidad Dam and Reservoir Project or by the construction and operation of said project. . . .”
The construction of the Trinidad Project then commenced. On behalf of itself and the Model Land and Irrigation Company, the Purgatoire Water Conservancy District on October 14, 1976 filed in the proceeding a pleading advising that the United States Corps of Army Engineers had formally advised the United States Bureau of Reclamation that the Trinidad Dam would be available for storage on January 1, 1977 and that use of the Trinidad Project would commence on January 1, 1977 “subject to the transfer of the Model Reservoir Right becoming operative in *514 accordance with the 1965 Decree.”
On July 6, 1976 Highland filed its “Appearance, Protest and Motion to Set Aside or Modify Conditional Decree” in the district court proceeding. The basis for its action was that it had been informed on information and belief
“that for many years the storage capacity of the Model Reservoir has been 6,000 acre feet or less, and that a transfer of more than this amount does not conform to historic use and will cause irreparable injury to [Highland].”
At the same time Highland moved that the case be transferred to the water court for further proceedings under section 37-92-601, C.R.S. 1973, being a part of the Water Right Determination and Administration Act of 1969.
As mentioned, the Purgatoire River Conservancy District moved on October 14, 1976 for a determination that the Trinidad Project would be finally constructed and ready for operation on January 1, 1977. On October 20, 1976 the court granted the motions of the petitioners to dismiss the motions of Highland to set aside or modify the decree and to transfer proceedings. On December 3, 1976 the court entered an order finding that the Trinidad Dam would be finally constructed and ready for operation on January 1, 1977 and that the transfer of the Model Storage Right to the Trinidad Reservoir would be operative on January 1, 1977 in accordance with the terms of the 1965 decree.
Highland considers the 1965 decree to have been interlocutory and predicates its appeal upon the arguments that (1) in order for the December 3, 1976 judgment to be rendered, there first must be application and notice as set forth in the Water Right Determination and Administration Act of 1969; and (2) it having received no notice, actual or constructive, of the 1962 application to change the place of storage of the Model Storage Right, it was entitled to be heard under its appearance, protest and motion and to present evidence and cross-examine witnesses.
The Water Right Determination and Administration Act of 1969 provides that, subject to the provisions of the Act, water rights and uses vested prior to June 7, 1969 by virtue of any previous or existing laws shall be protected. Section 37-92-102(2)(a), C.R.S. 1973.
Section 601 of the Act provides in part:
“All proceedings pending on June 7, 1969, for the adjudication of water rights, for a change of water rights, or for the disposition of other matters which are of the type to be handled by proceedings provided for in this article shall be concluded by June 1, 1972, in accordance with the provisions of the statute under which they are instituted, and priorities and changes of water rights which are determined in such pending proceedings shall be integrated by the various divison engineers in their current records and shall be included in tabulations prepared by the division engineers *515 pursuant to the provisions of this article. Any such proceedings which are not concluded by June 1, 1972, shall be heard from that time on to completion by the water judge for the division in which the proceedings are pending, under procedures provided for in this article; except that the chief justice of the supreme court may provide that a judge, other than the water judge, shall complete proceedings in specific cases.”
We hold that the 1965 decree was a final decree at the time of its entry, to become operative upon the occurrence of a condition subsequent; that an order making the decree operative was subject only to objection by the persons who were parties to the proceeding prior to the 1965 decree; that the provisions of section 601 do not relate to the instant proceeding; and that Highland is not entitled to object to, or ask for the vacation or modification of, the 1965 decree, nor object to the order making the 1965 decree operative.
As was stated in Dusing v. Nelson, 7 Colo. 184, 2 P. 922 (1884), an order is not interlocutory unless it “leaves something further to be done before the rights of the parties are determined.” The 1965 decree fully determined the rights of all parties to it. The petitioners were permitted to store the water of the Model Storage Right in Trinidad Reservoir upon its completion so long as they complied with several conditions designated to prevent injury to the protestants’ water rights. The protestants’ objections to the transfer were fully disposed of by the 1965 decree.
While Highland’s operations were in a water district other than those of The Model Land and Irrigation Company, the notice given under the Water Adjudication Act of 1943 as provided in C.R.S. 1963, 148-9-23 was effective as to Highland, and it is bound by the 1965 decree to the same extent as if it had been a party to that proceeding prior to the entry of the decree. City of Westminster v. Church, 167 Colo. 1, 445 P.2d 52 (1968).
Under section 17 of the 1943 Act a person or entity having water rights decreed in another water district had four years within which to object to a decree such as that rendered in 1965.
Subsection 17(2) of the 1943 Act provided in part:
“After the lapse of four years from the time of rendering such final decree, all persons, associations and corporations whose rights are thereby affected shall be deemed and held to have acquiesced in the same, except in case of any suits before them brought, and thereafter all persons, associations and corporations shall be forever barred from setting up any claim to priority or rights to water for irrigation or other purposes in such water district adverse or contrary to the effect of such decree.”
The decree entered on April 15, 1965 was a final decree so far as Highland is concerned and four years thereafter Highland became barred from questioning it. Quirico v. Hickory Jackson Ditch Company, 130 Colo. 481, 276 P.2d 746 (1954).
*516 Judgment affirmed.